[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1082 
OPINION
Gerald J. (Father) and Cynthia T. (Mother) appeal from a judgment following a selection and implementation hearing under Welfare and Institutions Code[2] section 366.26, which terminated their parental rights and placed their two children, Jennifer and Richard, for adoption. Both Mother's and Father's appeals included efforts to achieve review of certain orders made at prior review hearings.[3] Upon respondent's motion to limit the scope of appeal, this court determined that the review efforts which were the subject of the motion could not be challenged following the selection and implementation hearing. Following In re Taya C. (1991) 2 Cal.App.4th 1 [2 Cal.Rptr.2d 810] and In re Amanda B. (1992) 3 Cal.App.4th 935
[4 Cal.Rptr.2d 922], we ruled that review of interim orders made at review or reference hearings must be undertaken by timely writ petition and cannot be achieved as part of an appeal from a selection and implementation hearing judgment. We therefore issued an order limiting the scope of appeal.
The contentions which remain for determination are as follows: *Page 1083 
I. Error in the court's denial of Mother's request for testimony from the oldest child, Jennifer (Mother's appeal), and Father's request for a bonding study (Father's appeal).
II. Error in the court's failing to find under section 366.26, subdivision (c)(1)(A) that termination of parental rights would be detrimental because the minor would benefit from a continuing relationship with parents (both Mother's and Father's appeals).
III. Error in failing to find that termination of parental rights was not in the best interests of the minors (Father's appeal).
While each of these contentions is to some degree fact related, our discussion does not require or depend upon a detailed review of the background of this case. A brief outline of the proceedings will suffice. The status of Mother's several children came to the attention of the department of social services in August 1989, when a petition was filed alleging sexual abuse of the oldest child, Tammy, by mother's live-in boyfriend. (Tammy is not involved in this appeal.) The children were removed from Mother's home after a detention hearing on August 28. At a contested jurisdictional hearing in October 1989 the court found by clear and convincing evidence that Tammy had suffered sexual abuse and Jennifer and Richard were at risk of abuse or neglect under section 300, subdivisions (d) and (j). The children were continued in the custody of a licensed foster home.
Six-month and twelve-month review hearings did not result in reunification of children with parents. Reunification with Father was impeded by his violent character (threatening Mother and a social worker with a shotgun) and his incarceration for unrelated malfeasance. Mother's reunification was impeded by her lack of a consistent place of abode and the inability of the social worker to contact her. The children benefited from their care in the foster home, and the confidential report prepared for the 12-month review hearing recommended holding a section 366.26 selection and implementation hearing to determine permanent placement outside of the parents' home. Following this recommendation, the court ordered a section 366.26 hearing, which was ultimately held in August 1991, and orders terminating parental rights and placing the children for adoption were entered.
 DISCUSSION OF CONTENTIONS ON APPEAL I. Denial of Requests for Testimony and Examination of Minor
The older of the children considered at the selection and implementation hearing was Jennifer, aged seven. The various social reports indicated *Page 1084 
ambivalence on Jennifer's part respecting termination of ties with her parents. Both Mother and Father sought to produce direct evidence from Jennifer which, they asserted, would show bonding of Jennifer with her natural parents and a desire on her part to continue parental contacts. Father's effort came in the form of a motion for a bonding study, made three weeks before the scheduled section 366.26 hearing. This motion was denied by the court, resulting in Father's contention on appeal that he was improperly denied discovery. Mother's effort was to call Jennifer as a witness at the section 366.26 hearing. The court denied the motion. Each appeal contends that this preclusion of potential evidence constituted prejudicial abuse of discretion.
(1) We first dispose of the more readily resolvable contention, which asserts error because of the court's refusal to order a bonding study. Father argues that this order constituted an improper preclusion of discovery. This was not, however, a typical discovery motion; it did not seek to discover or view existing documents or information. Father's motion sought appointment by the court of a new, independent psychiatric expert for the purpose of undertaking a review of studies and reports on bonding already accomplished by other experts.
Although the court in a proceeding such as this is assuredly empowered to appoint one or more factfinding expert witnesses (Evid. Code, § 730), such action is a matter of discretion. Refusal to appoint a second expert to examine any particular issue will ordinarily not constitute abuse of discretion. (SeeIn re Marriage of Kim (1989) 208 Cal.App.3d 364, 372 [256 Cal.Rptr. 217]; Collins v. Superior Court (1977)74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273].)
The court here had received a complete social study report reviewing the relationship between parents and child (filed Oct. 12, 1989), a review report (filed Oct. 26, 1990), and a supplemental report (filed May 22, 1991), and knew it would receive a complete updated assessment before the section 366.26 hearing. It had received miscellaneous reports of the reunification efforts of Father, such as a letter from a psychotherapist dated October 16, 1990, which strongly recommended against unsupervised visitation with Father. The court knew that clinical psychologist C. Jane Shipman had been retained to serve as expert adviser respecting bonding and reunification, had received a letter report from the doctor in October 1990, and was to receive extensive live testimony from Dr. Shipman at the section 366.26 hearing. In these circumstances there was no obligation on the part of the court to appoint yet another expert to further review Father's relationships with his children. *Page 1085 
Mother's more difficult contention concerns the court's refusal to order testimony from Jennifer at the section 366.26 hearing. At the outset we should note that the minor "shall not be present" at the section 366.26 hearing "unless the minor so requests or the court so orders." (§ 366.26, subd. (e)(1).) Mother's counsel had requested at an earlier hearing that Jennifer be present at the section 366.26 hearing, but had accepted the court's determination not to order her presence, after it agreed that if her testimony were found appropriate a continuance would be ordered for that purpose.
During the section 366.26 hearing both Mother and Father renewed their request for Jennifer's presence and testimony, suggesting they thought she would state a desire for continued parental contact and would evidence some level of bonding. Counsel for Mother indicated that Jennifer need not be called if the court would accept a stipulation as follows: "[I]f the minor [were called she] would testify that she has a bonded relationship with her parents; that she does wish to have continued contact with her parents; and that it is not her desire to be adopted." Counsel for Father agreed to the stipulation, but neither County Counsel nor counsel for Jennifer would agree to all its terms. Accordingly, no stipulation was reached. However, the court, without objection from any party, stated: "I am going to take into consideration . . . that Jennifer is bonded and would wish to have contact with her parents."
As noted above, the statutory presumption is that the child will not be present during the selection and implementation hearing. (§ 366.26, subd. (e)(1).) Since the minor is not to be at the hearing, it may be assumed that in the usual case the minor's testimony will not be directly presented. However, parents in a dependency proceeding do have a right to call and examine witnesses (In re Malinda S. (1990) 51 Cal.3d 368, 383 [272 Cal.Rptr. 787, 795 P.2d 1244]), and under section 341 and California Rules of Court, rule 1449(b)(4) parents have the right to cause issuance of process to compel attendance of witnesses. The court is obliged at the selection and implementation hearing to consider the wishes of the child. (§ 366.26, subd. (g).) Jennifer's testimony obviously would have been relevant in terms of this issue, and also presumably for the purpose of determining the possible application of section 366.26, subdivision (c)(1)(A) (finding detriment from adoption because the minor would benefit by continued relationship with the parent).
Of course, the court may find a child too young to have the capacity to testify. (2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1057, pp. 1003-1004.) Also, a child witness can be found "unavailable" to testify if it is determined that the testimonial process would cause substantial emotional trauma to the child. (See Evid. Code, § 240, subd. (c).) There was no *Page 1086 
suggestion in this case, however, that Jennifer was either too young to give reliable testimony or that she could be determined "unavailable" under Evidence Code section 240, subdivision (c).
Our review of the entire record reveals that the court's refusal to call Jennifer as a witness was based upon its conclusion that calling Jennifer would be a damaging experience for her. Requiring her testimony would cause psychological stress and injury, and the possible benefit derivable from her testimony would not warrant the injury it would cause.[4]
Mother contends the court could not exercise this sort of discretionary exclusion of evidence, relying principally upon Inre Amy M. (1991) 232 Cal.App.3d 849 [283 Cal.Rptr. 788].[5]In re Amy M. was an appeal from an order adjudicating two children dependents of the court. One ground of appeal was the contention that the parents' due process rights had been violated by a court ruling precluding testimony from the youngest child, Michael, eight years of age at the time of the trial. The court's ruling was based upon testimony from Michael's medical evaluator, who said, "it would be stressful for Michael to testify because he was under significant psychological stress, . . . [and he] would suffer additional emotional harm if he testified." (In reAmy M., supra, 232 Cal.App.3d at p. 864.) In precluding the testimony the trial court said, "`I don't think in this case balancing what this child could do or could say versus what the damage to the child. . . . I don't think it makes any sense to have this child in here and the motion is denied.'" (Ibid.)
In reviewing this ruling the appellate court first referenced the fundamental rights embraced in the concept of parenting, and noted that due process required parents in a dependency proceeding be given the right to call and cross-examine witnesses. (In re Amy M., supra, 232 Cal.App.3d at p. 864.) *Page 1087 
The court noted that section 350, subdivision (b) prescribes special procedures, such as taking testimony in chambers, which are designed to protect the child witness from abuse. The court concluded, however, by observing that "[s]ection 350 gives a juvenile court no authority to refuse to allow a child to be called as a witness. . . ." (232 Cal.App.3d at p. 867.)
The reviewing court in Amy was also unimpressed by the trial court's finding of likely harm to Michael from testifying. It was noted that Michael's sibling had testified at length in a prior hearing, and she was the child who had suffered molestation.
Finally, the court determined that Michael's testimony could have been important in the outcome of the case. Expert testimony was in conflict as to the cause of Michael's psychological distress, and Michael's testimony might have supported the opinion of the parents' expert. (In re Amy M., supra,
232 Cal.App.3d at p. 865.) Further, the parents were not granted access to Michael before the hearing, and had no means of presenting his statements or opinions other than via his live testimony. (Id. at p. 868.) Under all these circumstances the court concluded the parents had been prejudicially precluded due process, requiring reversal.
We find Amy not to be controlling in this case. This was not a case, like Amy, in which the minor's testimony could have assisted in resolving a disputed issue. As noted by the stipulation initially accepted by both parents, the purpose of the testimony was to show that Jennifer wanted continued contact with her parents, that she would not choose to be adopted, and that there was bonding (at least with her father). While this evidence was not produced by way of stipulation, it nevertheless was accepted as established by the court. At the time of sustaining the objection to Jennifer's testimony the court considered it established that Jennifer would like further contact with her parents and that she was bonded to them. Later, when rendering its oral judgment from the bench, the court stated: "Although Jennifer was not allowed to testify here I have considered the fact that I believe if Jennifer were here, she would say that she wanted to be with you, that she is bonded to you, to both of you, and you in particular, [Father], and that she would not want this adoption to occur." Accordingly, the facts sought to be established by the minor's testimony were in fact accepted.
Further, the crucial factor in the court's decision was not the bonding of Jennifer to her father, or even the specific wishes of Jennifer in terms of future adoption. The court determined that adoption was the best disposition of Jennifer's futurenotwithstanding Jennifer's expressed views to the contrary and the court's full knowledge of those views. Dr. Shipman had *Page 1088 
testified at length as to the damage she considered would occur should Jennifer continue regular contacts with her father.[6]
Reflecting this testimony, the court in its oral statement of decision ruled that no benefit would be derived by Jennifer through continued regular contact with her parents. Hence, the pivotal factual decision in this case was a matter about which the minor had no knowledge, and the resolution of which would not have been aided by the minor's testimony.
Finding no controlling case authority in support of the appealing parents' position does not completely resolve the matter, however. (2) In order to sustain the court's ruling we must conclude that it is within the juvenile court's discretion to exclude the testimony of a child in order to avoid psychological harm to the child, even though that testimony is relevant, the child is competent to testify, and the child is both practically and legally "available" to testify. We do so conclude.
We find nothing in the law or rules pertaining to dependency hearings which specifically authorizes the court to exclude the minor's testimony in order to spare the child psychological damage. Evidence Code section 765, subdivision (b) gives the court special discretion to regulate the questioning of witnesses under the age of 14. The provision does not include, however, a power to exclude all testimony of a child witness.[7]
Evidence Code section 240, subdivision (c) permits the court to exclude testimony of a witness whose testifying would result in the witness's "suffering substantial trauma." This provision is not available in all dependency situations, however, because it is limited to witnesses who have been victims of crimes. It would not have been available in this case because Jennifer had not been molested or otherwise the victim of a crime. *Page 1089 
Nevertheless, we are convinced that the juvenile court judge in a proper case may refuse to require the attendance and testimony of the child who is the subject of the litigation. This power derives, we believe, from a recognition of the overriding objective of the dependency hearing — to preserve and promote the best interests of the child. It would be a perversion of the procedure to impose upon it a requirement that the child's testimony always be presented, regardless of the trauma resulting to the child therefrom, and regardless of the necessity of such testimony in the resolution of the issues before the court.[8] The refusal of the court to issue process requiring the attendance and testimony of the child should, assuredly, be a decision made only after a careful weighing of the interests involved. As stated in In re Amy M., supra, 232 Cal.App.3d at page 868, "fundamental rights are implicated in dependency proceedings, and they cannot be abrogated with impunity." Where, however, the child's desires and wishes can be directly presented without live testimony, where the issues to be resolved would not be materially affected by the child's testimony, and where it is shown that the child would be psychologically damaged by being required to testify, we hold the juvenile court judge has the power to exclude such testimony. Those circumstances were present in this case, and we therefore uphold the court's ruling.
 II. Error in Court's Failure to Find Detriment in Terminiating Parental Relationship*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 III. Error in Failing to Find Termination Generally Not "In Best Interests" of the Minors (3) In addition to contending that the court erred in not finding termination detrimental under the exception provided by section 366.26, subdivision (c)(1)(A), as discussed above, Father claims error as to a generalized finding which he asserts the court was required to make — that termination would be "in the best interests" of the minors. In fact, the court made no specific finding at all with respect to whether termination of parental rights would be "in the best interests" of the minors. We conclude that no such finding is required as part of the section 366.26 selection and implementation order.
The crucial decisions which terminate efforts to reunite parent with child are made at hearings which precede the selection and implementation hearing. Absent a change of circumstances and a motion to reconsider parental *Page 1090 
status (as could be brought under § 388) the court at the section 366.26 hearing is no longer seeking to reunify parent with child. Issues resolved at the section 366.21 or 366.22 review hearing may not be revisited at the section 366.26 hearing. The selection and implementation hearing proceeds upon the premise that efforts to reunify are over, and the objective is to select the long-term plan for care and custody which will most benefit the child. (Inre Taya C., supra, 2 Cal.App.4th at p. 8; In re Amanda B.,supra, 3 Cal.App.4th at p. 940.)
In accord with this concept, the procedures outlined in section 366.26 are quite structured. The permanent plan available to the court must be chosen from one of only four specific alternatives: termination of parental rights and adoption; identification of adoption as the plan but without immediate termination of parental rights; guardianship; or long-term foster care.
The findings to be made by the court are equally limited and specific. If adoption is found likely, the findings made at previous hearings to the effect that the minor cannot or should not be returned to the parent "shall then constitute a sufficient basis for termination of parental rights." (§ 366.26, subd. (c)(1).) The possible exceptions to this decisional path are then spelled out: Termination shall not be ordered if "termination would be detrimental to the minor due to one of [four specific] circumstances." (Ibid.)
Following this path of statutory procedure, it can be seen that there is no window of evidentiary opportunity for a parent to show that in some general way the "interests" of the child will be fostered by an order based on some consideration not set forth in section 366.26. This, indeed, seems to be the statutory objective, as summarized in the 1988 Senate Select Committee Report on Children and Youth:
"The critical substantive change [made in the new law] is that in order to terminate parental rights the court need make only two findings: (a) That there is clear and convincing evidence that it is likely that the minor will be adopted; and (b) that there has been a previous determination (at the dispositional or six, twelve or eighteen month hearing) that reunification services shall not be offered. In essence, the critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that reunification efforts should not be pursued. In such cases, the decision to terminate parental rights will be relatively automatic if the minor is going to be adopted. Termination would not be permissible, however, in the following situations: [The report then identifies the four exceptions set forth in section 366.26, subdivision (c)(1)(A) through (D)]." (Sen. Select Com. Rep. on Children and Youth, Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (1988) pp. 11, 12.) *Page 1091 
The trial court in this case followed the statutory prescription meticulously. It found that the child would be likely to be adopted and hence, based on rulings made at earlier hearings, determined to terminate parental rights. The court considered the four alphabetic exceptions to this presumptive outcome and determined that the only exception possibly applicable was that set forth in section 366.26, subdivision (c)(1)(A). This potential exception was reviewed at length, the court making detailed factual findings as to it. The court found subpart (A) not applicable by making a specific finding that the children would not benefit from a continuing relationship with their parents, and hence termination of parental rights would not be "detrimental."
In other words, the court made all the specific findings and determinations required by section 366.26. It was not required to make a generalized finding that "termination of parental rights is in the best interests of the minors."[9]
 DISPOSITION
The judgment is affirmed.
Wiener, Acting P.J., and Work, J., concurred.
Appellants' petition for review by the Supreme Court was denied October 29, 1992. Kennard, J., was of the opinion that the petition should be granted.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] Mother sought review of an interim order denying custody of her children during the reunification period. She complained of the court's refusal during the same period to place the child with the maternal grandmother, and she asserted that the psychiatric services rendered during the reunification period were inadequate. Father's appeal included an allegation of improper delegation of discretion over visitation during the reunification period; it also attacked the entire reunification process upon a broad allegation that the department of social services "never had reunification as a goal for this family."
[4] The argument made by the attorney for the child in support of the objection to calling Jennifer as a witness, which objection the court sustained, was as follows: "My objection is that I believe that it would be incredibly traumatic for [Jennifer] as evidenced by her therapist to try to make distinctions on the record between contact and ongoing contact through her childhood and staying where she is opposed to being adopted, where she is or not being adopted, where she is — I believe that asking her those questions will not only be traumatic, but almost impossible for a seven-year-old to respond to. And therefore, it makes it — it will make her testimony traumatic for her and I think at that point unacceptable to the court."
[5] Mother also placed reliance upon In re Tabetha S.
(Cal.App.). The opinion in this case (D014048) was ordered nonpublished by the Supreme Court on July 30, 1992. We therefore do not discuss arguments which might have been supported by this case. We believe, instead, that the correct construction of section 366.26, subdivision (g) is set forth in In re Jesse B.
(1992) ante, pages 845, 853 [10 Cal.Rptr.2d 516], which holds that "the references to testimony in the statute [are] intended to vest discretion in the juvenile court as to where, and in whose presence, the child's testimony will be taken, in theevent the child does appear and testify."
[6] Dr. Shipman had testified: "I feel that it would be detrimental to Jenny [to resume visitation]. I feel that she carried a lot of guilt and a lot of confusion when she was seeing her father as to what was going to be happening in her life, whether she was going to reunify. She picked up subliminal messages that he wanted her, that she would be reunified with him. It was very confusing for her. And based upon her past experience on these visits with her father, I feel it would be detrimental to reinstitute these visitations. She is bonding well with the foster family. She is doing well in school. I think this would be very upsetting to her and very confusing to her." As to Jennifer's bond with her father, Dr. Shipman testified, "I believe Jennifer has certainly a bond with her father. The bond is not necessarily a positive one. I would strongly feel it is a negative one."
[7] We note, however, that this authority has been used to severely curtail the examination of child witnesses. In In reMarriage of Okum (1987) 195 Cal.App.3d 176 [240 Cal.Rptr. 458], which involved a child custody battle, the court limited interrogation of the child to the court's own questioning in chambers, with only the attorneys and a court reporter being present. The attorneys were not allowed to engage in any interrogation of the child. This exercise of discretion was approved by the appellate court, the court noting that the litigation was "particularly acrimonious," and that the trial court was concerned that the testimony of the child might later affect the relationship of the child with parents. (Id. at p. 183.)
[8] See the discussion of trauma resulting to child witnesses, framed in terms of the issues involved in "psychological unavailability" of witnesses, in Myers, Child Witness Law andPractice (1987) section 5.27, pages 310-314.
* See footnote 1, ante, page 1080.
[9] Our view as to the specificity of findings required by section 366.26 appears to be supported by a very recent opinion from the Fifth Appellate District, In re Jesse B., supra, ante,
page 845. The contention of the parent in that case, appealing from an order terminating parental rights after a section 366.26 hearing, was that the court erred in not making a specific finding as to whether the minors would have benefited from a continuing relationship with their mother. Reviewing the requirements of section 366.26, the court found that the termination of parental rights required only two findings: (1) that the child is adoptable, and (2) that there exists any of the five additional findings resulting from prior hearings set forth in subdivision (c)(1) of section 366.26. It was not required, theJesse B. court found, that specific findings as to the potential exceptions to a decision to terminate, as set forth in subparts (A) through (D), be made. *Page 1092