[No. B109595. Second Dist., Div. Three. Oct. 1, 1997.]

In re JESSIE G., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent v.
BELINDA G., Defendant and Appellant.

**COUNSEL**

Judith Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Holly R. Bryan and John L. Geiger for Plaintiff and Respondent

## OPINION

**ALDRICH, J.—**

### INTRODUCTION

In her appeal from the trial court's order terminating her parental rights as to daughter Jessie G., and referring the minor for adoption, mother, Belinda G., argues there exists a limited "best interest" exception to the choice of adoption under Welfare and Institutions Code section 366.26,[1] based on the holding in *In re Jose V.* (1996) 50 Cal.App.4th 1792 [58 Cal.Rptr.2d 684], rather than the analysis of *In re Tabatha G.* (1996) 45 Cal.App.4th 1159 [53 Cal.Rptr.2d 93]. We hold there exists no distinct "best interest" exception to adoption, under section 366.26. The best interest of the minor is, however, implicit in the four enumerated exceptions to adoption under section 366.26, subdivision (c)(1)(A) through (D), although the court need not articulate that factor. The record here demonstrates the court did consider the question and concluded adoption was in Jessie's best interest. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case was before this court in 1995 (*Belinda G.* v. *Superior Court* (Aug. 28, 1995) B093918 [nonpub. opn.]), when Belinda G. sought an

---

[1] Hereinafter, all statutory references shall be to the Welfare and Institutions Code unless otherwise noted.

expedited review of the trial court's finding the department of children and family services (the department) had provided reasonable family reunification services and scheduled a selection and implementation hearing under section 366.26. We begin the factual recitation here by quoting from our opinion.

"Minors Christina, Aaron, Corey, Randy and Sarah previously had been adjudged dependent children of the juvenile court due to neglect related to Belinda G.'s excessive drug use. Jurisdiction in that case terminated on May 17, 1993.

"The minors again came to the attention of the juvenile court when Belinda G. gave birth on January 24, 1994, to premature twins, one of whom subsequently succumbed, who tested positive for opiates and amphetamines.

"The minors were declared wards of the court pursuant to section 300 based on a petition filed January 28, 1994. As sustained by the juvenile court on April 27, 1994, the petition alleged, inter alia, that Belinda G. was a user of opiates and amphetamines which periodically rendered her incapable of providing regular care for the minors."

Subsequent reports by the department indicated the minors were doing well in their respective foster homes while Belinda G. failed to complete drug counseling and continued to test positive for amphetamines. Reports reflected Belinda G.'s poor attendance and positive drug tests. Our opinion reflects further that Belinda G. had not attempted to visit any of her children. This court denied the petition for writ "[b]ecause substantial evidence supports the juvenile court's finding the Department provided reasonable family reunification services to Belinda G. . . ."

After our opinion was filed, the court scheduled a contested selection and implementation hearing pursuant to section 366.26. The matter was continued numerous times at the request of counsel and others, not including Belinda G. The selection and implementation hearing finally went forward more than a year beyond the statutory deadline.

In repeated reports filed in advance of the selection and implementation hearing, the department recommended parental rights be permanently terminated and Jessie be placed for adoption. The department's reason for this recommendation was that "Jessie continues to have no parent or guardian capable of providing her with the necessities of life. Adoption remains the case plan [for] her." The social worker reported Jessie was "very happy and engaging . . . . She is very loving and has a positive relationship with her

current caretaker." The adult daughter of Jessie's foster mother who had developed ties with Jessie since 1994, expressed her interest in adopting Jessie. The prospective adoptive mother had passed the homestudy and was ready to adopt Jessie.

At the contested section 366.26 hearing, held over the course of a number of days, the departmental social worker responsible for Jessie opined the most appropriate permanent plan for Jessie was adoption. This opinion was based on the attachment the child had demonstrated with her foster mother and adoptive mother, with whom she had been living for most of her life, and on Belinda G.'s inability to cooperate with the case plan. For example, Belinda had trouble scheduling and keeping visits with Jessie. *The social worker observed no relationship between Jessie and Belinda G.*

Belinda G.'s drug counselor testified that while Belinda G. has completed her drug counseling program since 1995, including the parenting component of the program, and has 10 negative drug test results, in his opinion, she did not complete the program "satisfactorily." The counselor felt Belinda G. had an ulterior motive, namely to satisfy the court's requirements so she could get custody of her children. The counselor stated also Belinda G. did not appear at all of the scheduled meetings, and her attendance was so poor the counselor could not attest to her leading a drug-free lifestyle. Nonetheless, Belinda G. did appear at sufficient number of the meetings to merit her certificate of completion.

With numerous reports in evidence, including the department's reports dated February 27, June 26, April 18, and October 23, 1996, all recommending termination of parental rights and adoption for Jessie, the trial court ordered parental rights be terminated and Jessie be adopted. In doing so, the court stated, "[W]e also have to look at the child and we have to look and see what is in the minor's best interests. And I think the whole law says what is in the minor's best interests. [¶] . . . . I'm looking here through all this law to see where I can go around it and there is no place. I have no choice. It's cut and dried and I must do it. I must terminate parental rights at this time."

Belinda G.'s appeal followed.

CONTENTION

Belinda G. contends the trial court abused its discretion in terminating parental rights over Jessie.

DISCUSSION

■ At the section 366.26 hearing the court must select and implement a permanent plan for the dependent child. The express purpose of the section

366.26 hearing is "to provide stable, permanent homes for these minors." (§ 366.26, subd. (b).) There are only four specific alternatives for the court in selecting the permanent plan: "termination of parental rights and adoption; identification of adoption as the plan but without immediate termination of parental rights; guardianship[,] or long-term foster care." (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1090 [10 Cal.Rptr.2d 813].)

If "there is no probability of reunification with a parent, adoption is the preferred permanent plan. . . ." (*In re Tabatha G., supra,* 45 Cal.App.4th at p. 1164, citations omitted.) The court may only select adoption as the permanent plan if the court finds by clear and convincing evidence the minor will likely be adopted. (§ 366.26, subd. (c)(1).) A parent opposing termination of parental rights must demonstrate termination would be detrimental to the minor under one of four enumerated exceptions in section 366.26, subdivision (c)(1)(A) through (D). (*In re Tabatha G., supra,* 45 Cal.App.4th at p. 1164.) Otherwise, absent evidence termination is detrimental under one of the exceptions, the statute mandates the court terminate parental rights. (§ 366.26, subd. (c)(1); *In re Tabatha G., supra,* 45 Cal.App.4th at p. 1164.)

 Belinda G. does not challenge the court's determination Jessie is adoptable. Rather, Belinda G. contends there is a limited best-interest exception to adoption, in addition to the four exceptions contained in section 366.26, subdivision (c)(1)(A) through (D), which should apply in this case.[2] The argument is that the court failed to consider whether adoption was in Jessie's best interest given her large sibling group. Not so.

---

[2]Section 366.26, subdivision (c)(1) states: "The court shall terminate parental rights only if it determines by clear and convincing evidence that it is likely that the minor will be adopted based upon the assessment made pursuant to . . . Section 366.21 or . . . 366.22. If the court so determines, the findings pursuant to . . . Section 366.21 or 366.22 that a minor cannot or should not be returned to his or her parent or guardian, shall then constitute a sufficient basis for termination of parental rights unless the court finds that termination would be detrimental to the minor due to one of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship. [¶] (B) A minor 12 years of age or older objects to termination of parental rights. [¶] (C) The minor is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed. [¶] (D) The minor is living with a relative or foster parent who is unable or unwilling to adopt the minor because of exceptional circumstances, which do not include an unwillingness to accept legal or financial responsibility for the minor, but who is willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the minor. This subparagraph does not apply to any minor, who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one minor is under six years of age and the siblings are, or should be, permanently placed together."

In *In re Tabatha G.*, a case from the Fourth District Court of Appeal, the parent argued the reference to "the interests of the minor" in subdivision (c)(4) of section 366.26 effectively amounted to a fifth exception to the statutory rule that adoption is the preferred permanent plan. Subdivision (c)(4) of section 366.26 provides: "If the court finds that adoption of the minor or termination of parental rights is not in the interests of the minor, or that one of the conditions in subparagraph (A), (B), (C), or (D) of paragraph (1) . . . applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the minor or order that the minor remain in long-term foster care." The *Tabatha G.* court concluded the "interests of the minor" was not a factor separate and distinct from the four exceptions enumerated in the statute.

As the *Tabatha G.* court explained: "In enacting section 366.26, subdivision (c)(1), the Legislature intended there be only four exceptions to selecting and implementing adoption as a permanent plan for an adoptable child. [Citations.] At the time of a selection and implementation hearing, '. . . there is no window of evidentiary opportunity for a parent to show that in some general way the "interests" of the child will be fostered by an order based on some consideration not set forth in section 366.26.' [Citation.] Nor did the Legislature provide an opportunity for a parent to show in a *specific* way that the child's best interests would be served by considerations beyond those enumerated in subdivisions (c)(1)(A) through (D)." (*In re Tabatha G.*, *supra*, 45 Cal.App.4th at p. 1164, original italics; *In re Jennifer J.*, *supra*, 8 Cal.App.4th at p. 1090.) Based on this reasoning, the *Tabatha G.* court rejected the contention subdivision (c)(4) creates yet another exception, explaining that had the Legislature meant to create a fifth exception, it would have done so in a subparagraph of subdivision (c)(1). (45 Cal.App.4th at p. 1165.) In short, the *Tabatha G.* court held there is no "best interests" of the minor exception in section 366.26, subdivision (c)(1) to the selection and implementation of adoption as a permanent plan, and "no legislative intent to create a broader exception not included in those expressly circumscribed." (*In re Tabatha G*, *supra*, at p. 1165.)

*In re Jose V.*, *supra*, 50 Cal.App.4th 1792, from the Sixth Appellate District, on which Belinda G. relies, disagreed with *Tabatha G.*, that section 366.26, subdivision (c)(4) was not intended to be a fifth exception separate from the specifically stated exceptions in subdivision (c)(1)(A) through (D). Instead, the *Jose V.* court explained ". . . the language in subdivision (c)(4) clearly authorizes the court to order guardianship if it finds that one of the circumstances in subdivision (c)(1)(A) through (D) is present *or* it finds that adoption is not in the minor's interests" under subdivision (c)(4). (50 Cal.App.4th at p. 1800, original italics.) Continuing, the *Jose V.* court stated,

"This appears to us to allow for the possibility that some circumstance or combination of circumstances could exist which would support a finding that adoption was not in the child's best interests even though none of the enumerated exceptions applied." (*Ibid.*) However, the *Jose V.* court never delineated what such circumstances would be.

Based on *Jose V.*, Belinda G. here argues the court did have the discretion to order guardianship if it found adoption was not in Jessie's interest.

We agree with *Tabatha G.* that there is no distinct best-interest exception to adoption contained in section 366.26, subdivision (c)(1), nor by reference to subdivision (c)(4). The Legislature's failure to formulate a fifth, separate such exception indicates its disinclination to include one. Nonetheless, the minor's best interest is a consideration implicit in the wording of subdivision (c)(1), just as it is implied throughout dependency law. As the *Tabatha G.* court explained, "The four specified exceptions to adoption provided in section 366.26, subdivision (c)(1) are a final check to ensure termination of parental rights *is in the best interests of the minor* and is the least detrimental alternative." (45 Cal.App.4th at p. 1165, italics added.) Hence, we conclude the court may consider whether adoption is in the minor's best interest when selecting and implementing a permanent plan; but it is not statutorily required to articulate that factor.

Turning to Belinda G.'s case, the evidence here shows that the court *did* consider Jessie's best interests. The court stated, "[W]e also have to look at the child and we have to look and see what is in the minor's best interests. *And I think the whole law says what is in the minor's best interests.*" (Italics added.) With that, the court ordered that parental rights be terminated and that the department proceed with adoptive placement. The clear implication of the court's statement is that it knew full well its statutory obligations and made the determination adoption *was* in Jessie's best interests. As the court made the determination here that adoption was in Jessie's best interests, the so-called "best interest" exception would not apply here.

Belinda G.'s contention is unpersuasive that adoption was not in Jessie's best interests because her relationship with her siblings would forever be terminated if she were adopted. The fact is, by finding inapplicable the exception in section 366.26, subdivision (c)(1)(A), namely that the minor has had regular visits with her parent and would benefit from continuing contact, the court has necessarily concluded it was not in Jessie's best interests to continue the relationship with her family. Moreover, it is manifestly too late to make Belinda G.'s family-relationship argument. The question of family reunification was finally decided by the trial court in the

section 366.21 hearing and by this court in our previous opinion. " 'The focus during the prepermanent planning stages is preserving the family whenever possible [citation] whereas the focus after the permanent planning hearing is to provide the dependent children with stable, permanent homes.' [Citation.]" (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1788 [42 Cal.Rptr.2d 200].) The evidence supports the court's implied finding here that adoption would be in Jessie's best interest. The record here shows Jessie has bonded well with her foster and adoptive mothers and she otherwise has had no particular relationship with Belinda G. or with her siblings.[3]

To summarize, the court here had already found Jessie could not be reunited with Belinda G. or returned to Belinda G.'s custody. There was clear and convincing evidence Jessie would be adopted and Belinda G. does not dispute that evidence. An adoptive parent indicated her willingness to adopt Jessie and she has been declared suitable by the department. None of the impediments to termination of parental rights under section 366.26, subdivision (c)(1)(A) through (D) has been found to apply. Moreover, the court found that adoption was in Jessie's best interest. As all of these factors are present, the decision to terminate parental rights was relatively automatic and no exercise of discretion was required. (*In re Jose V., supra,* 50 Cal.App.4th at p. 1801.) There was no error here.

DISPOSITION

The order is affirmed.

Klein, P. J., and Kitching, J., concurred.

---

[3]Also, a good portion of Belinda G.'s appeal concerns the department's lack of effort in facilitating visitation between Jessie and her siblings. Belinda G.'s insistence to the contrary, she does not have standing at this point in the proceedings to challenge sibling visitation. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365 [52 Cal.Rptr.2d 474].) In any event, the department explained it is not always true the sibling relationships are terminated when children are adopted.