Filed 5/16/14  In re A.K. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.K. et al., Persons Coming Under the Juvenile Court Law. | B250410 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ALFONSO K., SR.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK94682) |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Alfonso K. (father) appeals from the juvenile court's jurisdictional and dispositional orders as to his three children, Alfonso K. (Alfonso), Alondra K. (Alondra) and Alonzo K. (Alonzo). Father contends the juvenile court erred in denying his motion for a mistrial after new counsel was appointed to represent him during trial. Father also contends that he was denied due process when the juvenile court denied his request to call Alfonso as a witness. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Father and Raquel A. (mother) have three children together: Alfonso, age 6, Alondra, age 5, and Alonzo, age 3. Mother also has two older children from another relationship: K., age 11, and Enrique, age 9.[1] In October 2008, mother called the police and reported that father had punched her and struck her on the arms and shoulders. The police observed that mother had a "black eye and bruising on her left shoulder," and arrested father for spousal abuse. However, mother recanted her account of the abuse, and later told a social worker that father's friend had told her that she "would not be alive for too long" if she pressed charges. Father is part of the "Calle Cuarenta" gang and has a criminal history including a conviction for carrying a concealed firearm in 2002.

In September 2011, mother called 911 after father grabbed her by the hair and threw her on the bed. Mother then moved into her sister's home with the children. Later that month, mother called the police and reported that when father had found out where she was living, he came over to her residence, grabbed her by the neck, and

---

[1]      K. and Enrique's father is not a party to this appeal.

2

said: " '[G]ame over bitch. I am going to kill you.' You cannot hide from me." Mother then fled to Fresno with the children, where they moved into a friend's house.

On December 6, 2011, father reported to the police that mother had abducted his children. The police located mother in Fresno, found the children to be "clean and healthy," and left the children with mother "as there was no family law order in effect." Father then filed for custody of his children. Mother did not appear for the hearing, and based on father's allegations, the family law court awarded sole legal and physical custody of the children to father, noting that "it appears that [mother] has [a] substance abuse problem."

Before the order could be enforced, mother fled to Tijuana, Mexico, with the children. Father reported to the police that mother had abducted the children, and the Child Abduction Unit sought to locate them. Father eventually found mother and the children in Tijuana and notified the Child Abduction Unit of their location in July 2012. The children were in the custody of the Mexican Child Protective Services, and were turned over to the Child Abduction Unit.[2] When the deputies brought the children to meet with father, "all the children began to cry" and the oldest child said " '[father] is a bad man who tried to kill mother . . . . ' " Based on the children's reaction, the deputies refused to release the children to father and referred the case to the Department of Children and Family Services (Department).

---

[2] The Mexican Child Protective Services apparently detained the children when they received a referral saying that mother was leaving the children by themselves, prostituting herself, and abusing drugs. Father made the same allegations to the American police. There is no evidence beyond father's statements corroborating these allegations.

On July 23, 2012, the Department filed a petition alleging that father's "violent conduct" against mother endangered the children. Father was also alleged to have physically abused mother's oldest son, Enrique, and to have kept a handgun at home within access of the children. The Department interviewed the family about the abuse.

Mother said that father had frequently hit her when they lived together. He had hit her while she was holding Alondra, who was a baby at the time; he had punched her on multiple occasions, causing her to faint; and he had threatened to kill her. Mother said the only time she confronted father was when she had stepped in to protect Enrique from father's physical abuse. Father denied ever hitting mother.

Kaytie, who was nine at the time, said father hit Enrique every day, and that "[mother] did not let him hit Enrique and [father] hit my mom with his fists." Enrique, who was seven at the time, said he had seen father " 'hitting my mom many times. He hits her with his open hand. [¶] He grabs her by the hair and threw her on the bed and hits her with his hand. . . . [He also] hits me with his hand and over my head and arms. He also hit me with a belt on my arms.' " Alfonso, who was five at the time, said that "[father] would hit [mother]." Alondra and Alonzo were too young to be interviewed.

The juvenile court detained the children and released them to mother's care. At trial, Enrique, Kaytie and mother were called as witnesses by father's counsel. Enrique testified that father hit him with a belt on his buttocks and arms, and that father told him he could not go to school when the abuse left marks on him. Enrique further testified that he saw father hit mother multiple times leaving "purple marks" on her legs and her arms.

4

Kaytie testified that she saw father hit Enrique "almost every day," that father first hit Enrique when he was one or two years old, and that father hit mother multiple times. Kaytie also said that she once found a gun in the closet, and that mother told father to take the gun "far away from the house." Mother testified that father had physically abused her primarily during the last three years of their relationship, and that she had been "in fear for [her] life."

At that point in the proceedings, father's counsel informed the juvenile court that he had a conflict because of his firm's representation in another case, and was forced to withdraw from this case. The court allowed counsel to withdraw and appointed new counsel for father. The court ordered that transcripts of prior testimony be provided to new counsel, and continued the trial to allow new counsel time to become familiar with the case.

When trial resumed, father's new counsel moved for a mistrial on the grounds that she would not "have proceeded in the manner [prior counsel] did" and there were "certain evidentiary rulings" that she was unaware of because they had been made at hearings for which she had no transcripts. The court asked counsel how she would proceed differently if a mistrial were granted. Counsel said that she would seek to admit the testimony of father's oldest child, Alfonso. The court denied the motion for a mistrial and allowed father's counsel to reargue any prior ruling or recall any witness to the stand.

Father's counsel sought to call Alfonso, who was five years old at the time, as a witness. The court asked for an offer of proof, and stated that "[Alfonso's] of tender

5

age and why does he need to be brought to court and possibly traumatized by this?" Father's counsel responded that Alfonso was a "witness to many of these incidents" and should be cross-examined regarding his statement to the Department that " '[father] would hit [mother].' " The court denied counsel's request.

The juvenile court sustained the petition, finding that father's physical abuse of Enrique and mother, and the presence of a handgun in the house, placed the children at risk of harm. The court removed father's children from his custody, and returned all of the children to mother's care. The court also issued a permanent restraining order protecting mother and the children from father. Father timely appealed.

### *CONTENTIONS*

Father contends the juvenile court erred in denying his motion for a mistrial because the substitution of counsel during the jurisdiction and disposition hearing prevented him from receiving a fair trial. Father also contends he was denied due process when the juvenile court denying his request to call Alfonso as a witness.

### *DISCUSSION*

1. *The Court Did Not Abuse Its Discretion In Denying a Mistrial*

A mistrial terminates a trial for error that has prevented a party from receiving a fair trial and that cannot be remedied by other measures. (*People v. Avila* (2006) 38 Cal.4th 491, 573.) " 'Generally [a] trial judge has discretion to grant or deny [a motion for a mistrial], and will grant it on determining that a party's chances of receiving a fair trial have been irreparably damaged.' [Citation.]" (*People v. Welch* (1999) 20 Cal.4th 701, 749.) Here, the juvenile court did not abuse its discretion in

6

refusing to grant a mistrial as father was not prejudiced by the substitution of new counsel.

Father contends that he did not receive a fair trial because his new counsel (1) was not aware of all of the court's evidentiary rulings, (2) was unable to assess the demeanor of the witnesses who had already testified, and (3) had a different approach to the case from that of father's prior counsel. With respect to the first argument, father does not identify which evidentiary rulings his new counsel was not informed about. Furthermore, the juvenile court gave father's new counsel the opportunity to reargue any ruling and, thus, had counsel wished to admit any particular piece of evidence that had previously been excluded, she had the opportunity to do so.

With respect to the second argument, the court gave new counsel the opportunity to recall any witness to the stand, therefore, counsel could have questioned any witness to observe his or her demeanor with respect to certain statements. Lastly, father has not explained how new counsel's use of a different approach to the case prejudiced him. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 330 [appellant's burden to show both error and prejudice].) Father does not allege that his former counsel provided ineffective assistance, only that he adopted a different strategy from that of his new counsel. This is not a basis for a mistrial. Accordingly, father has not shown that he did not receive a fair trial such that an order declaring a mistrial was warranted.

2.      *The Juvenile Court Properly Excluded Alfonso's Testimony*

Father also argues that he was denied due process by the juvenile court's refusal to allow him to call Alfonso to the stand. "As in other civil cases, parties to

7

a dependency proceeding have a statutory due process right to cross-examine and confront witnesses. [Citations.]" (*In re Amy M.* (1991) 232 Cal.App.3d 849, 864.) In *Amy M.*, the court of appeal held that the juvenile court erred in excluding a dependent child's testimony. (*Ibid.*) The court of appeal found that the testimony should have been admitted because the child's statements had not been previously presented to the court, and his testimony was crucial to resolving a disputed issue. (*Id.* at p. 868.)

In contrast, in *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, the court of appeal affirmed the juvenile court's exclusion of a dependent child's testimony, holding that the juvenile court "may refuse to require the attendance and testimony of the child who is the subject of the litigation . . . [1] [where] the child's desires and wishes can be directly presented without live testimony, [2] where the issues to be resolved would not be materially affected by the child's testimony, and [3] where it is shown that the child would be psychologically damaged by being required to testify . . . . " (*Id.* at p. 1089.)

Here, father's counsel sought to cross-examine Alfonso regarding his statement that "[father] would hit [mother]." Father contends that this testimony should not have been excluded because it could have been "relevant to the question of whether the children should be removed from [f]ather and whether a permanent restraining order was necessary." Alfonso's testimony was certainly relevant to the question of removal and the restraining order, however, father has not shown that Alfonso's testimony would have "materially affected" those issues. (*In re Jennifer J., supra,* 8 Cal.App.4th at p. 1089.) Even if Alfonso, on cross-examination, recanted his observation that father hit mother, there was still abundant evidence substantiating the domestic violence.

In addition, the court was concerned about the negative impact of requiring a five-year-old to testify as to physical abuse of his mother by his father. The record indicated that the Child Abduction Unit deputy noted that Alfonso, as well as the other children, began to cry when he first saw father after returning to the U.S. In addition, mother had reported to the Department that father had once, through a "friend," threatened to kill mother when she attempted to testify against him. Based on evidence of father's prior threat to a potential witness against him, evidence that Alfonso had witnessed father's violent behavior, and evidence that Alfonso was afraid of father, it was reasonable for the court to conclude that Alfonso would be psychologically harmed by being required to testify. Accordingly, the court properly excluded Alfonso's testimony because (1) his statement of the abuse was already in the record, (2) his testimony would not have "materially affected" the issues to be resolved, and (3) he would be "psychologically damaged" by being required to testify. (*In re Jennifer J., supra,* 8 Cal.App.4th at p. 1089.)

Furthermore, there is no indication that the outcome of the dispositional hearing would have been different had Alfonso testified. (*In re Amy M., supra,* 232 Cal.App.3d at p. 868 [a parent's due process right to call a witness to testify is reviewed under the harmless error analysis].) At disposition, the juvenile court must find, by clear and convincing evidence, that "[t]here is or would be substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or

9

guardian's physical custody." (Welf. & Inst. Code, § 361, subd. (c)(1).) Here, the evidence showed that father had physically abused mother and Enrique and left a gun within access of the children in the house, and, therefore, could not safely parent his children. Thus, there was substantial evidence supporting the removal order. This evidence also justified the issuance of a permanent restraining order against father. (*In re B.S.* (2009) 172 Cal.App.4th 183, 194 [a restraining order may be granted "if 'failure to make [the order] may jeopardize the safety of the petitioner . . . . ' [Citations.]"].)

## DISPOSITION

The orders are affirmed.

*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

KITCHING, J.