Filed 8/21/24  In re H.H. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re H.H. et al., Persons Coming Under the Juvenile Court Law. | B333897, B335057 (Los Angeles County Super. Ct. No. 20CCJP03745B, C) |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Affirmed.

Lillian Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

M.G. (mother) has filed two appeals. First, she challenges the denial of her request for a sibling bonding study. Second, she challenges the denial of her petition to reinstate reunification services and the finding she had not established a sibling relationship exception to the termination of her parental rights. Due to the intertwined issues involving the bonding study and the sibling relationship exception, this opinion addresses both appeals.

Finding no error in these orders, we affirm.

## FACTUAL BACKGROUND

M.G. is the biological mother of H.H. (born December 2019) and I.H. (born May 2021).[1] The children also have an older half sister, L.E.[2]

---

[1] I.H. was born after the Los Angeles County Department of Children and Family Services (the Department) filed the petition concerning H.H. H.H. and I.H. are children of Daniel H.

[2] L.E. is not a party to this appeal. Throughout the pendency of this matter, L.E. and H.H. were placed together. In March 2023 the court placed L.E. with her father, Ruben E.

**Petition filed for H.H. and L.E.**

The Department filed a petition under Welfare and Institutions Code section 300[3] on July 14, 2020, alleging mother's actions endangered the health and safety of the children, H.H. and L.E. The petition alleged mother and Daniel H. engaged in violent verbal and physical fights in the children's presence, and mother endangered the children through her substance abuse and her possession of drug paraphernalia and a blow torch in the home.

At the detention hearing a prima facie case that H.H. fell within section 300 was made. H.H. was placed with a caregiver. Later, mother submitted to the court's jurisdiction, and the petition was sustained on all counts. Monitored visitation was ordered for both parents. Family reunification services were ordered for mother.

**Petition filed for I.H.**

On January 14, 2022, the Department filed a petition alleging I.H.'s health was endangered by the violent conduct between mother and Daniel H. (father) and by mother's failure to enforce a criminal protective order against father. The Department also alleged mother failed to protect I.H. from harm based on mother's substance abuse, including positive tests for marijuana during her pregnancy with I.H. The petition included allegations that I.H.'s siblings, H.H. and L.E, were already dependents of the juvenile court due to the violent conduct and substance abuse of the parents.

---

[3]     All further unattributed statutory references are to the Welfare and Institutions Code.

During the hearing the court determined that sufficient evidence was presented to establish a prima facie case under section 300, leading to I.H.'s placement with a caregiver. At the jurisdictional hearing the court declared I.H. a dependent and placed him in the Department's custody, with directions to make best efforts to place all three siblings together. Visitation and reunification services were ordered for mother.

H.H. and I.H. were placed in the home of Bessie H., along with half sister L.E. In March 2023, L.E. and was reunified with her father.

**Struggles with substance abuse and termination of reunification services**

Mother struggled with issues involving substance abuse throughout the dependency proceedings. At the September 1, 2022 hearing on reunification services for H.H., the court noted mother had relapsed and her substance abuse had not improved after nearly two years of services.[4] As a result, reunification services were terminated for H.H.

At the April 25, 2023 status hearing on reunification services for I.H., the court found mother had missed drug tests and experienced another relapse. Following the hearings on reunification efforts, the court found mother's progress had been "unsubstantial" and terminated family reunification services for I.H.

In June 2023, mother again relapsed and ceased visitation with the children for over six months. On December 18, 2023,

---

[4] The court also found mother had concealed her continued relationship with father, the relationship that was the basis for the domestic abuse allegations in the section 300 petition.

4

mother entered a residential treatment program. She resumed visitation with H.H. and I.H. in late December 2023.

**Denial of mother's request for bonding study**

Mother filed a motion requesting a bonding study to evaluate the sibling relationship among H.H., I.H., and L.E. She argued the court lacked sufficient evidence to determine whether the loss of the sibling relationship outweighed the benefits of adoption. The Department opposed, asserting adequate information about their relationship could be gleaned from Department reports on the children. The juvenile court denied mother's motion both because a study would delay a permanent resolution for the children and the evidence and arguments could be made without a study.

**Petition for reinstatement of reunification services**

Mother filed two section 388 petitions seeking six additional months of reunification services as to H.H. and I.H. In support, mother provided evidence of her enrollment in the treatment program, her renewed commitment to sobriety, and her resumed visitation with the children. At the hearing mother testified to her progress in treatment. The juvenile court denied the petition, finding mother's one month of sobriety did not constitute changed circumstances, and additional services were not in the children's best interests given their need for permanency.

**Permanency planning hearing**

At the permanency planning hearings on January 22, 2024, and February 2, 2024, mother argued the parental benefit and sibling relationship exceptions to termination of parental rights should apply. The juvenile court found the parental benefit exception did not apply because mother did not show consistent

5

visits, a beneficial relationship, or a detriment that would arise from terminating her parental rights.

As to the sibling relationship exception, the court acknowledged H.H., I.H., and L.E. shared a "very strong connection," but found H.H. and I.H. had remained with their caregiver for nearly a year after L.E.'s departure "without any major or apparent detrimental impact." The court also noted the caregiver had agreed to continue facilitating visits between the siblings postadoption. Ultimately, the court found mother had not met her burden of proving this exception applied and terminated her parental rights.

Mother filed timely notices of appeal.[5]

## DISCUSSION

Mother challenges (1) the denial of her sibling bonding study request, (2) the finding the sibling relationship exception did not apply, and (3) the denial of her section 388 petition to reinstate reunification services.

I.    **There was no abuse of discretion in the denial of mother's motion for a sibling bonding study**

A.    *Standard of review*

While expert testimony can be useful to assess bonds between family members (see *In re Caden C.* (2021) 11 Cal.5th

---

[5]    Mother has filed three appeals. The first, B329174, is directed at the denial of her request for the children to be placed with a relative. The denial was affirmed in *In re H.H.* (May 1, 2024, B329174) (nonpub. opn.).

Her other two appeals, B335057 and B333897, are the subject of this opinion.

6

614, 633, fn. 4), the juvenile court has discretion to order a bonding study under Evidence Code section 730. (Evid. Code, § 730; *In re Jennifer J.* (1992) 8 Cal.App.4th 1080.) There is no requirement in statutory or case law for a juvenile court to obtain a sibling bonding study as a condition precedent to a termination order. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.) Accordingly, we review the denial of a request for a bonding study for abuse of discretion. (*Id.* at p. 1341.) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

**B.    *The juvenile court did not abuse its discretion***

The juvenile court's decision to deny mother's request for a bonding study was well within the bounds of reason. The court properly considered two critical factors in reaching its decision: (1) the potential delay in permanency for the children, and (2) the sufficiency of existing evidence regarding the sibling relationship.

**1.    *As reunification services had been terminated, the focus was on the children's needs for permanency***

The juvenile court expressed concern about further delay in achieving permanency for H.H. and I.H. Reunification services had been terminated for mother. "Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The court's focus on the delay to the children's needs was entirely appropriate. H.H. and I.H. had been in foster care for over three years and two years, respectively, when the study was requested. The court reasonably concluded that ordering a

7

bonding study at this late stage would cause unwarranted delay in securing permanency for the children. The decision was not arbitrary or capricious, but rather a sound exercise of the court's discretion to focus on the children's needs for permanency.

Mother argues her delay in seeking the bonding study was necessitated by the Department's repeated failures to provide court-ordered information about the sibling relationship. While the record reflects some deficiencies in reporting, the juvenile court was aware of the issues and took steps to address them by ordering additional information that was provided in reports filed on November 13 and November 14, 2023, thus addressing the deficiencies in the reporting and showing information about the relationship was available without a bonding study.

We find no abuse of discretion in the denial of mother's request for a sibling bonding study.

**2.** *Evidence of the sibling relationship could be offered without the requested study*

The juvenile court also found the evidence of the sibling relationship could be offered without a bonding study. A review of the record shows significant evidence of the sibling relationship: (1) H.H. and I.H. were visiting consistently with L.E. since March 2023; (2) L.E. was having overnight visits with H.H. and I.H. twice a month; (3) H.H. and L.E. were reported to be "well bonded"; and (4) a postadoption contact agreement had been signed, ensuring ongoing sibling visitation.

Furthermore, at the hearing mother's counsel acknowledged there was "evidence of a bond that would cause harm to the children if that bond is severed" without a bonding study. This admission further supports the court's conclusion

that existing evidence was sufficient to evaluate the sibling relationship exception.

## II. Finding mother did not establish the sibling relationship exception was not an abuse of discretion

Mother challenges the termination of her parental rights, arguing the juvenile court erred in finding the sibling relationship exception did not apply.

### A. *Standard of review*

Section 366.26, subdivision (c)(1) provides for the termination of parental rights if family reunification services have been terminated and the juvenile court finds by clear and convincing evidence that the child is likely to be adopted. Once reunification services have been terminated, "'[f]amily preservation ceases to be of overriding concern . . . the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability.'" (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1195.) "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)

Although the statutory preference is in favor of adoption, section 366.26 lists certain exceptions that may preclude termination of parental rights, if the juvenile court finds "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).)

One exception is the sibling relationship. When determining whether terminating parental rights would substantially interfere with a sibling relationship, the juvenile court must first evaluate the nature and extent of that relationship, "including, but not limited to, whether the child was

9

raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).) This exception does not apply often. (*In re D.O.* (2016) 247 Cal.App.4th 166, 174, quoting *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014 ["'application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount'"].)

"If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952 (*L.Y.L.*).)

To show a substantial interference with a sibling relationship, the person opposing the termination of parental rights "must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*L.Y.L., supra*, 101 Cal.App.4th at p. 952, fn. omitted.)

We apply the substantial evidence standard to the juvenile court's underlying factual determinations, and the abuse of

discretion standard to the court's weighing of competing interests. (*In re D.O., supra*, 247 Cal.App.4th at p. 174.)

**B.** ***Substantial evidence supported the court's findings***

Mother argues insufficient evidence supports the court's decision on the sibling relationship due to the court's denial of her request for a sibling bonding study. However, it was mother's burden to prove this exception applied. (*In re Celine R.* (2003) 31 Cal.4th 45, 61.) The court's denial of her requested bonding study did not preclude mother from presenting other evidence to meet this burden.

Moreover, there was substantial evidence in the record showing termination of parental rights would not substantially interfere with the siblings' relationship. The caregiver testified she intended to continue facilitating visits among the siblings postadoption. The caregiver maintained communication with L.E.'s father to coordinate visits, received L.E. into her home for overnight weekend visits, and intended on continuing the visits among the siblings. The caregiver had also entered into a postadoption contact agreement with L.E.'s father to preserve the sibling relationship. Substantial evidence, therefore, supports the court's finding that termination of mother's parental rights would not substantially interfere with the sibling relationship.

The benefits of adoption outweigh any potential interference with the sibling relationship. The children spent years in foster care and the focus was on achieving a permanent and stable home for them. Once they were in their placement with the prospective adoptive parent, they thrived.

Given the evidence that sibling contact would continue and the importance of providing H.H. and I.H. with a stable home,

11

the court did not abuse its discretion when weighing the competing interests and concluding mother had not established the sibling relationship exception.

## III. There was no abuse of discretion in the denial of mother's section 388 petition to reinstate services

Mother also challenges the denial of her section 388 petition seeking additional reunification services for H.H. and I.H. As mother's single month of sobriety did not show a changed circumstance nor that it was in the best interests of the children to reinstate services, we disagree.

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. [Citation.] 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.'" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.) "We review a juvenile court's denial of a section 388 petition for abuse of discretion, and review its factual findings for substantial evidence. [Citation.] We may disturb the exercise of the court's discretion only when the court has made an unreasonable or arbitrary determination." (*Id.* at p. 846.)

The juvenile court found mother failed to meet her burden on both prongs. Although mother entered a residential treatment program, she had been sober for only one month at the time of the hearing. Given mother's history of relapse, the court could reasonably conclude this short period of sobriety did not constitute a significant change. (See, e.g., *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [when there is a history of drug use and relapses, 200 days of sobriety is not enough to show changed circumstances].)

12

The court also found additional services were not in the children's best interests. "'[T]o prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate.'" (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 627.) Mother had received two years of services for H.H. and over one year for I.H. The children had been in foster care for most of their lives. The court properly prioritized the children's need for stability over mother's interest in reunification. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

On this record, the juvenile court's denial of mother's section 388 petition was not an abuse of discretion.

## DISPOSITION

The orders of the juvenile court are affirmed.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
HOFFSTADT, J.

13