Filed 1/31/14  In re D.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re D.S., a Person Coming Under the Juvenile Court Law.

SAN BERNARDINO COUNTY
CHILDREN AND FAMILY SERVICES,

    Plaintiff and Respondent,

v.

M.J.,

    Defendant and Appellant.

E058182

(Super.Ct.No. J247096)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.

1

I

INTRODUCTION

Father, M.J., appeals, challenging the juvenile court's jurisdictional, dispositional, and visitation orders involving his son, D.S.  Father contends the dependency pleadings were defective and substantial evidence did not support the court's findings and orders. We disagree and affirm the orders of the juvenile court.

II

FACTUAL AND PROCEDURAL BACKGROUND

Father was born in 1973 and lost custody of his first child who was born in 1995. Mother was born in 1985.  D.S. was born in May 2002 when mother was 16 years old.

A. *2003 Detention*

D.S. suffered a spiral fracture of his left femur when he was 10 months old. Father said he had accidentally "leaned" on D.S.  D.S. was eventually returned to mother's care.  In 2012, mother claimed father had actually broken D.S.'s leg.

B. *2012 Detention*

CFS[1] filed the original dependency petition in December 2012.  The petition alleged serious physical harm, failure to protect, and serious emotional damage (Welf. &

---

[1] Children and Family Services, County of San Bernardino.

Inst. Code, § 300, subds. (a), (b), and (c)),[2] based on mother, L.M., intentionally sitting on D.S. and fracturing two vertebrae; the stepfather, M.M., injuring D.S. and causing a nosebleed; mother's alcohol abuse; mother and M.M.'s domestic violence; and the parents' ongoing custody dispute. D.S. had two younger half-siblings, A.M. and C.M.

CFS recommended family reunification services for all three children. After a contested three-day detention hearing, D.S. and his younger sisters were ordered detained in separate foster homes. The court ordered the parents to have supervised visitation with D.S.

*C. Jurisdiction and Disposition*

The jurisdiction and disposition report included medical information that D.S. had compression fractures and abnormalities in the T4 and T10 vertebrae. The medical professionals believed that at least one fracture was acute and could have happened by mother forcefully sitting on the child's back. However, D.S. may also have suffered earlier injuries that were aggravated by additional injuries in November 2012.

During a CFS forensic interview on November 30, 2012, D.S. reported that his mother "sat on his back and jumped on him causing him pain" and his stepfather gave him a bloody nose. D.S. disclosed that mother and M.M. used alcohol while driving with the children.

---

[2] All further statutory references are to the Welfare and Institutions Code unless stated otherwise.

3

CFS interviewed father who insisted he had cooperated with family law custody orders involving D.S.  Mother adamantly denied injuring D.S. or knowing he was injured.  However, she admitted he complained of back pain.  Mother thought D.S. could have been hurt when his younger sister, A.C., jumped on his back in a moment of excitement.  A.C. offered the same explanation.  Mother was intending to seek medical treatment for D.S. after December 1 when he was eligible for Medi-Cal.  Mother also denied that M.M. had caused D.S. to have a bloody nose and blamed D.S. for "purposely 'picking his own nose.'"  Mother denied abusing drugs or alcohol.  She was nursing her younger daughter and had a negative drug test.   Mother also denied domestic violence between her and M.M.  But, on December 4, 2012, mother told CFS she was going to live with her mother because she was afraid of M.M.  Mother agreed there had been ongoing custody disputes about D.S. with father.

The parents had been involved in a contentious custody dispute since 2006.  They had participated in 10 mediations in six years and an unsuccessful mediation in November 2012.  Mother participated in supervised visitation with D.S. between May 2012 and October 2012, which was characterized by ongoing strife between the parents and erratic behavior by D.S.  In family court, mother had regained custody of D.S. on October 25, 2012; the minute order stated that "Court admonishes Petitioner that if 730 evaluation is not [complete] the Court will change custody." The family court set November 29, 2012, as the hearing date on the issues of custody and visitation.

4

An Evidence Code section 730 evaluation ("730 evaluation") was ordered in family court and prepared by Dr. Robert Suiter for the hearing on November 29, 2012. The evaluation had been initiated in 2009 but suspended by mother who agreed by stipulation that father could have primary physical custody of D.S. Mother then moved to Hawaii in July 2010 and did not see D.S. for about 15 or 18 months. Supervised visits resumed in January 2012. At the time of the 730 evaluation in October 2012, D.S. was 10 years old and in the fifth grade. He had good grades and was polite. D.S. stated his father took excellent care of him and helped him with his homework, soccer, and Tai Kwon Do classes. D.S. claimed that, when he had lived with his mother, she had spanked him with a belt and hit him with her fist. His stepfather also hit him with a belt and restrained him on the floor. D.S. was extremely negative about his mother and stepfather. Dr. Suiter was critical of both parents but concluded father should continue to have custody and mother's visitation should be increased.

On January 4, 2013, D.S. disclosed to CFS that he had lied about his mother and stepfather injuring him. During the pretrial settlement conference, in an in-chambers hearing, D.S told the juvenile court that his mother did not sit on him nor did his stepfather intentionally bump his nose. Instead, his four-year-old sister had jumped up and down and rammed him, hurting his back, and he had also hurt his back playing soccer. His father had directed him to lie about what had happened. D.S. was fearful of returning to live with his father although his stepfather had struck him with a belt and his mother hit him with her hand.

5

At the jurisdictional and dispositional hearing on February 28, 2013, the court dismissed all allegations of physical abuse, domestic violence, and alcohol abuse against mother and stepfather. The court sustained the allegation under section 300, subdivision (j), that the girls were at risk of harm due to the unstable home situation as a result of the custody battle between mother and father. The court returned the girls to mother and stepfather under a plan of family maintenance. The court declared D.S. a dependent of the court under section 300, subdivisions (b) and (c), finding true allegations that D.S. is the subject of an ongoing custody dispute affecting his emotional well-being. The court observed D.S. was being "torn apart" by his parents. The court then removed D.S. from parental custody, ordered supervised weekly visits with father if D.S. was willing, and reunification services with father to include conjoint counseling when appropriate. D.S. was placed in the home of the maternal grandmother.

III

SUFFICIENCY OF PLEADINGS AND SUBSTANTIAL EVIDENCE

FOR JURISDICTION

Father's first attorney argued below that the allegation under section 300, subdivision (b), that he failed to comply with family law custody orders was too vague and was not supported by substantial evidence. As to allegations under section 300, subdivision (c), that the parents' custody dispute had affected D.S.'s emotional well-being, father argued the allegation did not plead and the evidence did not prove the type of emotional damage the statute required. However, subsequently, father's second

6

attorney conceded that D.S. came under the court's jurisdiction under section 300, subdivision (c). Ultimately, after father had executed a knowing waiver of his right to trial on the petition, the court found true the subdivision (c)-8 allegation and the subdivision (b)-9 allegation as amended: "The minor . . . has been the subject of an ongoing custody dispute between the mother . . . and the father . . . which is so pervasive it creates instability in the home." Because of his attorney's concession and father's execution of the trial waiver, we conclude father's challenge to the facial sufficiency of the dependency petition was forfeited on appeal by the failure to object. (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 82-83.)

Even if there was no forfeiture, however, we would still find substantial evidence supports the juvenile court's jurisdictional findings. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) Section 300, subdivision (c), permits the assertion of jurisdiction over a minor where "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent . . . ." (§ 300, subd. (c).) To prove that a minor comes within this statutory definition of a dependent child, CFS bears the burden of establishing the following three elements: "(1) serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior or a substantial risk of severe emotional harm if jurisdiction is not assumed; (2) offending parental conduct; and (3) causation." (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379.)

The court found true, under counts c-7 and c-8, the allegations that the parents' custody dispute had "placed [D.S.] in the center of their conflict and affects his emotional well-being." Section 300, subdivision (c), specifically delineates "the type of impairment to the child's emotional functioning which will support intervention." (*In re Alexander K.* (1993) 14 Cal.App.4th 549, 559.) Father contends there is no substantial evidence D.S. suffered "serious emotional damage" because the record lacks evidence of behavior that meets the statutory definition of "severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others." (*In re Brison C., supra*, 81 Cal.App.4th at pp. 1379-1380.) Father contends the child's anxiety about returning to a parent does not necessarily support dependency jurisdiction. (See *id.* at p. 1380.) Father asserts there is a significant emotional cost to all children whose parents divorce but that section 300, subdivision (c), is not intended to protect all children suffering the emotional consequences of divorce and D.S.'s emotional problems are not any greater than other children whose parents disagree about custody.

Having reviewed the record, we disagree with father's minimization of the effects of his parents' divorce on D.S. D.S. demonstrated terror and fear toward his father and once erupted in a rage against his mother, causing him to be "dripping wet from sweating and his face . . . beet red." The visitation monitor expressed his opinion that D.S. was being manipulated by an adult. D.S. showed signs of trauma, distress, and psychological disturbance. The court and the attorneys all acknowledged that D.S. was suffering. As the court described it, D.S. was being "torn apart."

Dependency jurisdiction was proper under section 300, subdivision (c), because of the damage to D.S.'s emotional well-being. Therefore, we do not need to review the additional ground for jurisdiction under section 300, subdivision (b). (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1127.)

IV

SUBSTANTIAL EVIDENCE FOR REMOVAL

On February 28, 2013, the court ordered D.S. removed from both parents and placed him with the maternal grandmother. Father was granted supervised visitation.

"The governing statute, section 361, subdivision (c), is clear and specific: Even though children may be dependents of the juvenile court, they shall not be removed from the home in which they are residing at the time of the petition unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being *and* there are no 'reasonable means' by which the child can be protected without removal. [Citation.] The statute embodies 'an effort to shift the emphasis of the child dependency laws to maintaining children in their natural parent's homes where it was safe to do so.' [Citations.]" (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288.) As an appellate court, we review the record in the light most favorable to the juvenile court's order. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.)

Father argues that he, not mother, was the custodial parent in November 2012 when D.S. was detained. However, that issue is not relevant because the court removed

9

D.S. from both parents at the dispositional hearing on February 28, 2013. Even if mother was not the custodial parent, we still agree the juvenile court properly removed D.S. from the parents based on clear and convincing evidence of a substantial danger to his physical health, safety, protection, or physical or emotional well-being and there being no reasonable means to protect him.

Father relies on *In re Basilio T.* (1992) 4 Cal.App.4th 155, 171-172, to argue this is not an extreme case of parental abuse or neglect and D.S. "could have been maintained in his father's custody under the court's and the Department's supervision, while he participated in conjoint counseling with both his parents and parents participated in co-parent counseling to achieve a healthy relationship for [D.S.'s] sake. The juvenile court failed to select this viable and less drastic alternative than removal from father's custody." Father focuses on the faults of mother and M.M. without seeming to recognize D.S. was removed from mother as well.

In any case, father refused to participate in counseling and was generally resistant to participating in reunification services. As discussed above, D.S. was at risk of harm from both parents and emotional harm from a father who was coaching and manipulating him to make false accusations against mother. The juvenile court's dispositional order removing D.S. from both his parents was fully supported by the evidence.

# V

## VISITATION

At the dispositional hearing on February 28, 2013, the court granted father minimum supervised visitation of one hour per week subject to liberalization of frequency and duration. (§ 362.1, subd. (a); *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008-1009.) The language of the governing statute provides in relevant part: "In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, . . . : [¶] (1)(A) . . . Visitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) Although the court said D.S. would never be forced to visit, a child may not be allowed to control whether visitation occurs. (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1505.) In January 2013, D.S. expressed ambivalence about visiting with father.

Father maintains the court made an improper delegation of authority to D.S. and CFS to determine whether any visits would occur at all. (*In re Hunter S., supra*, 142 Cal.App.4th at p. 1505.) We disagree the court could make an order compelling D.S. to visit father and father cites no authority to the contrary.

We also reject father's contention that the juvenile court abused its discretion in denying father's request for D.S. to testify at the dispositional hearing as to the issue of visitation. It lies "within the juvenile court's discretion to exclude the testimony of a child in order to avoid psychological harm to the child, even though that testimony is

11

relevant, the child is competent to testify, and the child is both practically and legally 'available' to testify." (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1088.) "[T]he juvenile court judge in a proper case may refuse to require the attendance and testimony of the child who is the subject of the litigation. This power derives, we believe, from a recognition of the overriding objective of the dependency hearing—to preserve and promote the best interests of the child. It would be a perversion of the procedure to impose upon it a requirement that the child's testimony *always* be presented, regardless of the trauma resulting to the child therefrom, and regardless of the necessity of such testimony in the resolution of the issues before the court. . . . Where, however, the child's desires and wishes can be directly presented without live testimony, where the issues to be resolved would not be materially affected by the child's testimony, and where it is shown that the child would be psychologically damaged by being required to testify, we hold the juvenile court judge has the power to exclude such testimony." (*Id.* at p. 1089.) In this case, the record shows the D.S. was willing to have supervised visits—which is exactly what the court ordered—meaning there was no need for his testimony and no abuse of discretion in denying father's request.

Finally, we reject father's argument that, during the pretrial settlement conference on January 4, 2013, the court made comments that illustrated its misunderstanding of the burdens of proof for jurisdiction and disposition and violated father's rights of confrontation and due process by not ordering unsupervised visitation. Instead, we conclude the court made the indefensible observation that father would receive

reunification services when it made the jurisdictional and dispositional orders. Furthermore, unless father could make a relevant offer of proof, the court would order supervised visitation based on the evidence before it. Father never offered the court any reason to make different orders than those being contemplated. Therefore, he cannot argue on appeal his rights of confrontation and due process were violated.

## VI

## CONCLUSION

The juvenile court properly sustained the dependency petition. Substantial evidence supports the juvenile court's jurisdictional, dispositional, and visitation orders. We affirm the orders of the juvenile court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

KING

J.