Filed 7/13/23  In re O.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| In re O.R., a Person Coming Under the Juvenile Court Law. | C097450 |
| SISKIYOU COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.L.,<br><br>Defendant and Appellant. | (Super. Ct. No. SCCVJVSQ202074) |

Appellant D.L. (mother), mother of minor O.R., appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  Mother contends the juvenile court erred by denying her request

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

for a bonding study. She also contends the Siskiyou County Health and Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) because the Agency did not make any ICWA inquiry of extended family members. We conditionally affirm subject to full compliance with the ICWA on remand, as described in this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On November 19, 2020, the Agency filed a section 300 petition on behalf of minor O.R. (then age two) based on mother's inability or failure to care for, supervise, and protect the minor due to mother's mental illness and/or substance abuse, as well as ongoing domestic violence in the minor's presence. Mother had two prior dependency cases based on substance abuse, violence, and inadequate living conditions, and had failed to reunify with her two other children. Neither mother nor the alleged father, S.R., appeared at the detention hearing. The juvenile court ordered the minor detained. On December 14, 2020, the Agency reported mother was not cooperating and the Agency had not yet been able to locate the minor.

On January 4, 2021, the Agency reported it had custody of the minor and requested the matter be set for a contested jurisdiction/disposition hearing. The Agency reported mother had been incarcerated for much of the period between the filing of the petition and the disposition hearing and had been testing positive for alcohol since her January 2021 release. Mother was not interested in substance abuse services and did not believe she needed them. The minor was described as a sweet, hyperactive child, but he had displayed aggression toward other children and used profanity. The juvenile court sustained the petition, declared the minor a dependent child of the court, removed him from parental custody, and ordered reunification services be provided to the parents.

By the time of the September 27, 2021 six-month review hearing, mother had made minimal progress and remained in an abusive relationship with continued domestic violence. Mother had missed 30 percent of her thrice weekly supervised visits with the

2

minor due to her work schedule and claimed she did not have time to participate in reunification services. Visits went well when mother visited alone, but on the one day a week she visited with her significant other, she allowed her significant other to do most of the parenting while mother remained quiet and less engaged. It was noted that, at an April 1, 2021 visit, the minor had refused to approach mother and her significant other when the minor arrived at the visit, although he hugged them both goodbye at the end of the visit. The alleged father had not remained in contact with the Agency and his whereabouts were unknown. Despite mother's minimal progress, the juvenile court continued her reunification services.

On October 25, 2021, mother submitted to a court-ordered psychological evaluation, resulting in the examiner's opinion that she would not benefit from reunification services and did not accept responsibility for her current circumstances. In its March 4, 2022 12-month review report, the Agency reported mother had still not completed the elements of her case plan or demonstrated any change in behavior. She had been calling 911 to report acts of harassment so frequently that she was "well-known" to local police and had continued to test positive for alcohol, yet denied use.

Supervision of mother's thrice weekly visits had to be increased due to mother's erratic and confrontational behavior. She continued to miss visits on a regular basis, attending only 60 percent of the offered visits. The visit quality varied, had recently declined, and visits were sometimes destructive. The minor often had to wait 15 minutes for mother to arrive for visits, and he was reported to have "an incredibly difficult time" when mother did not show up. His post-visit behavior also coincided with the varying quality of visits, with no behavior issues on those occasions mother's mental health had been stable at the visit, but aggressive behavior when mother had been "inattentive, rambling, and generally unstable." The Agency's report provided details of five particularly concerning visits that had occurred over the reporting period. Father did not appear to be willing to engage in services, had not maintained contact with the Agency,

3

and had visited the minor on only four occasions, with the visits subsequently described as being of poor quality.

The Agency recommended the juvenile court terminate reunification services, order an adoption assessment be performed, and set a section 366.26 hearing.

On May 23, 2022, the juvenile court found the Agency had provided reasonable reunification services and that the parents' progress at alleviating the causes necessitating the minor's removal had been minimal. It terminated reunification services, directed an adoption assessment be performed, and set a section 366.26 hearing.

The Agency's section 366.26 hearing report was served and filed on September 2, 2022. The Agency recommended termination of parental rights and a plan of adoption for the minor. It attached the adoption assessment, prepared by adoption specialist Amy Bromelow of the State Department of Social Services, dated August 1, 2022. Bromelow determined the minor to be adoptable and did not believe termination of parental rights would be detrimental to the minor. She recommended termination of parental rights and a plan of adoption for the minor. Mother's visits had been reduced to once a month, and while mother had attended all the scheduled visits during the reporting period, mother had concerning behavior at one of the visits, the minor was obstinate and aggressive after visits with mother, and the minor's interactions with mother at visits were indicative of an insecure attachment.

The parties appeared on September 12, 2022, for what was, in substance, a status hearing. At that hearing, mother and the Agency requested the juvenile court set a contested section 366.26 hearing for October 17, 2022. The juvenile court accommodated the request.

At the commencement of the October 17, 2022 contested section 366.26 hearing, mother requested a continuance to permit her attorney to file an ex parte request for a bonding study in order to support an argument that the beneficial parental relationship exception to adoption applied. Her attorney made an offer of proof as to mother's

4

testimony regarding her relationship with the minor as follows: Mother had been visiting the minor three times a week until her visits were decreased to once a month; her relationship with the minor had "remained extremely strong"; the minor runs up to her at visits; the minor cries and is distraught at the end of visits; the minor does things that show a bond with mother, including sitting on her lap and seeking reassurance when hurt; and they have fun and play together at visits. Mother believed it was "crucial that someone who has expertise in bonding issues be allowed to observe visits" and report as an expert.

The Agency and the minor's counsel objected to a continuance, although the Agency noted that the hearing would not be concluded that day so it could not prevent mother's counsel from filing the ex parte request for a bonding study. Both the Agency and the minor's counsel also noted that any such request for a bonding study at this time was untimely. The juvenile court then noted that a request for a bonding study had "not been submitted yet" and, "[o]bviously, the Court w[ould] need to get that and consider the timeliness and the appropriateness of granting the request." The minor's counsel again objected to a continuance of the section 366.26 hearing, noting mother had sufficient time prior to the hearing to explore the issue of bonding.

The juvenile court denied the request for a continuance and decided to start the hearing, since Bromelow was prepared and available to testify. Mother testified first, followed by the social worker, and then Bromelow. Mother's counsel then said she may need to recall mother on rebuttal but would potentially need to present, as a further witness, a bonding study expert. Over the minor's counsel's objection, the juvenile court did not conclude the hearing, in order to permit mother's counsel to file the ex parte request for a bonding study. The minor's counsel again objected to the untimeliness of such a request and argued that such an interview itself would be detrimental to the minor and would put undue pressure and guilt on the minor by making him feel he was able to determine, to some extent, the outcome of his permanent plan. The Agency joined in the

5

minor's counsel's objections. The juvenile court again noted that the request for a bonding study had not been submitted yet and the court expected the timeliness and appropriateness issues would be addressed in the request. The juvenile court continued the matter to October 24, 2022, remarking that that should be enough time to get the request submitted.

Mother filed an ex parte application for funds for the purpose of obtaining a parent-child bonding study, as well as a sibling bonding study (with respect to mother's two older children who were removed from her custody prior to the minor's birth). The application summarized the evidence mother asserted established she had visited as regularly as her circumstances had permitted and asserted that expert testimony was necessary to establish the beneficial parental relationship exception and rebut the testimony of Bromelow. Regarding the sibling bond, the application asserted mother had testified that, prior to these dependency proceedings, the minor had shared experiences with the older siblings and that, if they were permitted to visit one another, their bonds would be apparent. Mother had testified that the minor had visited with the older children prior to the minor's removal.

On October 24, 2022, mother's counsel decided to proceed by way of offer of proof rather than recall mother for rebuttal testimony. It was represented that mother would testify that she had provided her work schedule to the social worker and informed the social worker that if she missed work, she would lose her job; "[a]ll three of her employers had warned her that she would lose her employment if she went to a visit instead of" reporting for work; and she had COVID-19 two times in 2021. Mother's counsel then concluded, "With that, I would be submitting." The parties stipulated to the court's acceptance of the offer of proof and mother's counsel affirmed that she had no further evidence on behalf of mother.

The juvenile court confirmed that all the evidence for the hearing had been submitted and then, before proceeding to argument, stated it wanted to address mother's

6

counsel's request for a bonding assessment and potential expert testimony. It indicated its tentative ruling would be to deny the request but would permit mother's counsel additional argument. Mother's counsel said she would submit on the argument made in the application.

The juvenile court then explained that it had reviewed the file and all the reports, specifically with regard to the request for a bonding study. It also specifically acknowledged that it had the "discretion to appoint an expert at any time" it believed it "would be necessary or helpful to the determination of an issue or would be likely to provide necessary and relevant evidence." It had considered the evidence and the history of the case, as well as the stated reason for the request as being to rebut the testimony of Bromelow. It noted Bromelow's testimony had been primarily focused on her observations of a visit and the Agency had provided additional evidence about that visit. Although Bromelow had given her opinion that the minor had an insecure attachment in her report, she was not questioned about that opinion or her recommendation. The juvenile court then found "that a bonding assessment at this point" in the case was "not likely to provide additional evidence that would be helpful to the issues." It found there was "already sufficient evidence for the court to evaluate the relevant issues." The juvenile court also agreed with the minor's counsel that the process of a bonding study, in and of itself, was "likely to be detrimental to the [minor] and risk emotional harm." Finally, the juvenile court further found the request untimely, specifically referring to and quoting from *In re Richard C.* (1998) 68 Cal.App.4th 1191, 1195-1197 (*Richard C.*). The juvenile court denied the request as neither appropriate nor timely in this case. It then remarked that the case had been pending for nearly two years, the minor was in "desperate need [of] permanence of one type or another," and further delay to obtain evidence not likely to assist the court was not in the minor's best interests.

The juvenile court then heard argument regarding the likelihood of adoption and the beneficial parental relationship exception to adoption. No argument was made

7

regarding the sibling exception to adoption. The juvenile court then found the minor likely to be adopted within a reasonable time and that neither exception to adoption applied. With respect to the beneficial parental relationship exception, the juvenile court found that despite the evidence that mother missed a significant number of visits, she met the minimum requirements of regular contact. But the juvenile court found that, based on the minor's tender age at removal and length of time in foster care, the mixed effects of visits with mother, the deterioration in the quality of visits after the six-month review, and the minor's behavioral and emotional problems following visits at which mother was mentally unstable, mother had not shown the minor has a substantial positive emotional attachment to her and would benefit from a continuing relationship. The juvenile court also found that, considering the minor's age and history, the interactions between the minor and mother, and all the facts and circumstances of the case, any detriment to termination of parental rights is outweighed by the benefits of adoption.

We provide additional facts, as they relate to the ICWA, in our discussion of the issue below.

DISCUSSION

I

*Request for Bonding Study*

Mother contends the juvenile court abused its discretion in denying her request for a bonding study. We review the denial of a request for a bonding study for abuse of discretion. (*Richard C.*, *supra*, 68 Cal.App.4th at p. 1195.) We find no abuse of discretion in the juvenile court's denial of the request as untimely or as unnecessary.

Under Evidence Code section 730, a court *may* appoint an expert to study the bond between a parent and a child. (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.) "There is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to" terminating parental rights. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.) The juvenile court has broad discretion on whether to order

8

a bonding study. (*Id.* at pp. 1339-1340.) On review, we determine "whether, under all the evidence viewed in a light most favorable to the juvenile court's action, the juvenile court could have reasonably refrained from ordering a bonding study." (*Id.* at p. 1341.)

In *Richard C.*, upon which the juvenile court relied, the mother requested a bonding study after the section 366.26 report had been prepared, arguing that due process required the court to allow a neutral expert to assess the mother's bond with her children. (*Richard C.*, *supra*, 68 Cal.App.4th at pp. 1194-1195.) In affirming the denial of the request, the appellate court noted that the mother's request was untimely because it came after family reunification services had been terminated. (*Id.* at p. 1195.) At that late stage in the proceedings, " 'the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability.' " (*Ibid*.) The court reasoned that allowing bonding studies "after the termination of reunification services would frequently require delays in permanency planning," and that the "Legislature did not contemplate such last-minute efforts to put off permanent placement." (*Id.* at p. 1197.) Though "it is not beyond the juvenile court's discretion to order a bonding study late in the process under compelling circumstances, the denial of a belated request for such a study is fully consistent with the scheme of the dependency statutes, and with due process." (*Id.* at p. 1197.)

Consistent with *Richard C.*, the juvenile court here did not err in denying mother's last-minute request for a bonding study, first mentioned on the day of the October 17, 2022 scheduled contested hearing. Mother provided no adequate explanation for her delay in making the request, made even later in the proceedings than the request found untimely in *Richard C.* (*Richard C.*, *supra*, 68 Cal.App.4th at p. 1194.) Mother was on notice as early as March 4, 2022, that the Agency was considering adoption as a permanent plan. In its 12-month review report recommending reunification services be terminated, it reported the minor's current and former foster parents were both willing to provide permanency for the minor should reunification efforts fail, that the concurrent

9

plan for the minor was adoption, and that a referral to the State Department of Social Services had been made. Thereafter, on May 23, 2022, the juvenile court directed an adoption assessment be performed when it terminated reunification services and set the section 366.26 hearing. Nonetheless, mother did not make her request for a bonding study.

Nor did mother make her request following the Agency's September 2, 2022 section 366.26 hearing report, recommending termination of parental rights and a plan of adoption for the minor, and attaching the adoption assessment prepared by Bromelow. Indeed, she did not even make her request at the September 12, 2022 status hearing at which mother and the Agency requested the juvenile court set a contested section 366.26 hearing for October 17, 2022. Instead, mother waited almost five months after termination of her reunification services and notification that the Agency was considering adoption as a permanent plan, appeared at the scheduled section 366.26 hearing, and then requested a continuance in order to file an ex parte request for the study. Her delay was inexcusable and such a continuance was contrary to the goals of stability and permanence for minors after termination of reunification services. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [following termination of reunification services, focus shifts to child's need for permanency and stability].) The juvenile court did not err in denying her request on that basis.

Moreover, the stated reason for the study was to rebut the testimony of Bromelow. Yet, as the juvenile court noted, Bromelow's testimony was essentially limited to her observation of a visit. Mother was permitted to cross-examine her, and the Agency put on additional evidence about that visit. Mother provided no explanation as to how a bonding study would rebut Bromelow's testimony.

To the extent the bonding study was being requested to rebut Bromelow's recommendations made in the adoption assessment, that basis was not asserted and, in any case, was, again, inexcusably untimely. The Agency's section 366.26 hearing report

10

recommending termination of parental rights and a plan of adoption for the minor and attaching the adoption assessment prepared by Bromelow was served and filed on September 2, 2022, prior to the status hearing at which mother requested the October 17, 2022 contested hearing be set without mention of a continuance or a bonding study.

In any event, "[t]he kind of parent-child bond the court may rely on to avoid termination of parental rights . . . does not arise in the short period between the termination of services and the section 366.26 hearing." (*Richard C.*, *supra*, 68 Cal.App.4th at p. 1196.) Because the quality of the parent-child bond required to avoid termination of parental rights must necessarily have developed over time and have resulted in a continuing, positive emotional attachment that should be apparent at the time of the section 366.26 hearing, belated studies occurring just prior to the hearing may not be particularly useful in establishing an exception to termination of parental rights. (*Richard C.*, at pp. 1196-1197.) As observed by the juvenile court, such is the case here.

Without identifying any particular failings in the Agency's reports over the dependency period, mother asserted an expert was necessary to show the minor's bond with her to determine if termination of parental rights was in the minor's best interest. To the contrary, the nature of the bond was apparent from the reports over the course of nearly two years while the minor was in the dependency process. If there were some basis for concluding that expert evidence was required, the time for mother to request a bonding study would have been shortly after the juvenile court's termination of reunification services.

Additionally, because mother's request for a bonding study, brought at the time of the section 366.26 hearing, would have necessitated a continuance if granted, mother was also obliged to show that a continuance was not contrary to the minor's best interest. (§ 352, subd. (a).) Here, this young minor had been in the dependency system for almost two years and reunification services had been terminated approximately five months prior. The minor was, at this time, entitled as a matter of law to a permanent plan to

11

promote his stability and afford him a measure of permanence. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.) As recounted above, a bonding study would be of marginal assistance to the juvenile court. Given the need to schedule a time for the expert observations, allow the expert time to prepare a report, and allow the parties time to review the report, a substantial continuation of the hearing would be required if a bonding study were to be ordered. Mother made no showing that such continued delay for this purpose was in the minor's best interest.

We find no abuse of discretion in the juvenile court's denial of mother's request for a bonding study.

## II

### *ICWA Compliance*

The Agency reported that, despite mother's denial in this case that she has Native American ancestry, mother had identified the Choctaw and Crow tribes as potential ancestral tribes in her previous dependency cases. The Agency, therefore, sent notices to the Choctaw Nation of Oklahoma, Mississippi Band of Choctaw Indians, Jena Band-Choctaw, Crow Tribe of Montana, the Secretary of the Interior, and the Bureau of Indian Affairs on January 26, 2021. It received a negative response from the Choctaw Nation but no other responses. Based on this information, on September 27, 2021, the juvenile court found the ICWA did not apply.

Mother now contends the Agency failed to discharge its inquiry duty under the ICWA because it did not make any effort to inquire about Native American ancestry or obtain familial information from any of the maternal relatives, such as the maternal grandmother, the maternal uncle, or the maternal grandfather. We agree that the Agency's efforts fell short of its responsibilities in this case and reject the Agency's contentions that it did not err and/or that any errors were harmless.

" 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian

12

children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662, [251 Cal.Rptr.3d 50].) The ICWA defines an " 'Indian child' " as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Due to changes in California law over the past few years, agencies now have a broader duty of inquiry and documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when the agency fails to discharge its recently broadened duty of inquiry.[2] Agencies have often conceded error and, therefore, disposition of the issue on appeal has turned on whether the error was prejudicial. Although reviewing courts generally agree that reversal is dependent on showing prejudice, or a miscarriage of justice, approaches for assessing prejudice have varied. (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) Recently, our Supreme Court granted review in *Dezi C.* and we anticipate further clarification on this issue. Until such time, we conclude that, given the remedial purpose underlying the ICWA and related California law intended to protect third party rights, we apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm, and we conclude the errors and omissions made in this case are prejudicial. (*In re A.R.* (2021)

---

**2** The record here shows the Agency did not take temporary custody of O.R. pursuant to section 306, but rather, the minor was not detained until the juvenile court's entry of the detention order on November 20, 2020. Accordingly, although the juvenile court and the Agency had a general duty to inquire about the minor's possible Native American ancestry, the Agency's duty to question extended family members *imposed by section 224.2, subdivision (b)* arguably was not triggered. (See *In re Robert F.* (2023) 90 Cal.App.5th 492, 500, 504 [duty to inquire of extended family members under § 224.2, subd. (b) is triggered only when child is taken into temporary emergency custody under § 306].) Because the parties have not raised and briefed the issue, however, we assume the Agency had a duty to question extended family members about the minor's Native American ancestry in this case, whether based on section 224.2, subdivision (b) or on the possible Choctaw or Crow ancestry information it was provided at the outset of this case.

11 Cal.5th 234, 252-254 [determining whether an error is prejudicial requires viewing the error through the lens of the remedial purpose of the law at issue].)

The Agency argues there is nothing in the record to indicate maternal affiliation with any other tribes, beyond the Choctaw and Crow, and argues it provided notice to the Choctaw and Crow tribes. Thus, it argues, its failure to "put forward the results of any inquiries from the maternal uncle or grandfather" was harmless error. The flaws in the Agency's position are threefold: (1) The information it provided to the Choctaw and Crow tribes was incomplete based on the information the Agency already had; (2) there is nothing in the record to support the assumption that the Agency made ICWA inquiries of the maternal uncle or grandfather but simply failed to "put forward the results"; and (3) because the Agency did not make inquiry of any maternal relatives, it cannot know whether additional tribes should be contacted or additional information could be provided.

The ICWA notice that was sent to the Choctaw and Crow tribes did not contain any information about the maternal grandmother beyond her name and birthdate. According to the ICWA notice, the Agency did not have the maternal grandmother's current or former address. Yet, the section 300 petition alleged that the social workers had been to the home of the maternal grandmother in Siskiyou County on November 12, 2020. Thus, the information the Agency provided to the tribes was incomplete, as it did have the maternal grandmother's current or former address, at least one of which was known to the Agency.

The ICWA notice that was sent to the Choctaw and Crow tribes also failed to contain any information at all about the maternal grandfather. Yet, the January 26, 2021 jurisdiction/disposition report states that, on November 20, 2020, the social worker spoke with maternal uncle A.L. who, in turn, informed the social worker that the maternal grandfather, R.P., lived in Portland, Oregon. Thus, the information the Agency sent to the tribes was, again, incomplete, as the Agency, at the very least, had access to the

15

maternal grandfather's name and city of residence.  And, had the social worker inquired of the maternal uncle about the ICWA, he may have been able to provide additional or more complete familial information relevant to the tribes.

Although the Agency stated in the September 22, 2021 six-month report that it had been unable to locate any viable family members *for placement*, it did not indicate it had lost the ability to contact the maternal uncle and maternal grandmother, had attempted but failed to contact the maternal grandfather, and was unable to contact any other family members who were not potential placement options for ICWA inquiry purposes.  Thus, not only was the information the Agency provided to the tribes incomplete based on the information the Agency *did* have, but with further inquiry of the maternal relatives the Agency may also obtain additional familial information for ICWA purposes. Accordingly, we will conditionally affirm with remand for ICWA compliance.

DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion.  If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing.  (25 U.S.C. § 1914; § 224, subd. (e).)

/s/
ROBIE, J.

We concur:

/s/
HULL, Acting P. J.

/s/
HORST, J.*

---

\* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.