Filed 7/19/24  In re R.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re R.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>M.G.,<br><br>        Defendant and Appellant;<br><br>R.S. et al.,<br><br>        Respondents. | D083161<br><br>(Super. Ct. No. EJ4484 B–F) |

APPEAL from orders of the Superior Court of San Diego County, Mark T. Cumba, Judge.  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Minor and Respondent R.S.

Linda S. Rehm, under appointment by the Court of Appeal, for Minor and Respondent N.S.

Donna P. Chirco, under appointment by the Court of Appeal, for Minor and Respondent K.S.

Valerie N. Lankford, under appointment by the Court of Appeal, for Minors and Respondents J.S. and G.S.

M.G. (Mother) appeals the juvenile court's order terminating her parental rights over five of her seven children after 18 months of services.[1] She asserts the court erred by finding B, C, and D were adoptable and not applying the beneficial parent-child relationship exception to these children. (Welf. & Inst. Code,[2] § 366.26, subd. (c)(1)(B)(i).) She also argues the sibling exception to adoption applied as to E and F. (*Id.*, subd. (c)(1)(B)(v).) According to Mother, a conflict of interest existed because the same attorney represented A, B, and C. In Mother's final contention, she argues D's counsel provided ineffective assistance by not considering the effect A's continued contact with Mother would have on D's relationship with A. A's permanent

---

[1] Anonymizing the seven children in this case while preserving some measure of readability has posed something of a challenge given that several of the children have unique first names and six share the same last name. For ease of reference, we refer to the children in descending age order using the first seven letters of the alphabet and provide their ages at the time of the Welfare and Institutions Code section 366.26 hearing: Child A, X.G. (age 12); Child B, R.S. (age 10); Child C, N.S. (age 10); Child D, K.S. (age 7); Child E, J.S. (age 3); Child F, G.S. (age 2); and Child G, E.S. (age 9 months). The oldest and youngest children, A and G, are not subject to this appeal.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

plan was a legal guardianship that included weekly visitation with Mother. We reject Mother's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In late September 2021, Mother got into a minor collision in a parking lot with her six children in the car: A (then 10 years old), B (then eight years old), C (then seven years old), D (then five years old), E (then one year old), and F (then 22 days old). Law enforcement arrested Mother for driving while under the influence and child endangerment. The children were taken to Polinsky Children's Center and the San Diego County Health and Human Services Agency (Agency) filed section 300, subdivision (b) petitions on their behalf. The petitions alleged the children faced a substantial risk of harm because Mother was arrested for driving under the influence of alcohol with the children in the car and she had a prior case with the Agency in 2019 related to alcohol abuse. Additionally, the petitions stated R.S., II (Father) minimally participated in the prior dependency case and has a history of domestic violence and substance abuse. At the detention hearing, the juvenile court made a prima facie finding on the petitions, detained the children out of the parents' care, ordered supervised visitation for the parents, and appointed one attorney to represent all six children.

In November 2021, the court made a true finding on the petitions and ordered reunification services and supervised visitation for the parents. The Agency moved A and D to a licensed foster home and later transitioned B and C to the same home. In December 2021, D reported that Father had inappropriately touched her, and on that basis the Agency subsequently filed

---

[3]     Because our discussion addresses the relationship between Mother and her children, in the interest of brevity, we omit most of these details here and instead provide an outline of the proceedings leading to the court's findings.

3

a supplemental petition under section 300, subdivision (d) alleging sexual abuse.[4]

At the initial 12-month review hearing in November 2022, the children's counsel declared a conflict and requested a continuance. One attorney was appointed to represent A, B, and C; another attorney was appointed to represent D; and a third attorney was appointed to represent E and F. Later, at the contested 12-month review hearing in December 2022, the Agency conceded it failed to provide Mother with reasonable services, recommending continued services for her to the 18-month review date but terminating Father's services.

In January 2023, Mother gave birth to her seventh child, G.[5] During visits with all six children, Mother dedicated her time to E and F, had difficulty keeping the children safe, and appeared overwhelmed. At the contested 18-month review hearing in late April 2023, the juvenile court terminated Mother's services and set a section 366.26 hearing. In May 2023, B and C moved to a new foster home. The boys appeared happy and were affectionate with their caregiver. The caregiver for A and D reported the home was calmer after B and C left.

At the contested section 366.26 hearing in late October 2023, the court received into evidence stipulated testimony from B, C, and D. The court found by clear and convincing evidence the children were adoptable based upon their young ages, overall health, and the current caregivers' desire to adopt them. As to A, the court ordered a legal guardianship because A was

---

[4]    The court made a true finding on the supplemental petition and amended the case plan for both parents to include sexual abuse services.

[5]    G was made a dependent of the court and placed in foster care with a different family from the six older children.

4

12 and objected to adoption. The court granted Mother two hours supervised visitation once a week and terminated jurisdiction over her.

The juvenile court found that Mother demonstrated regular and consistent visitation with the children and met the first prong of the beneficial parent-child relationship exception. But it found no substantial emotional attachment between Mother and the children and determined that the benefits of adoption outweighed maintaining the children's relationship with Mother. After finding the sibling exception did not apply, the court terminated parental rights to the five youngest children and freed them for adoption.

A month after the contested section 366.26 hearing, the Agency filed an ex parte request asking the juvenile court to order an Interstate Compact Placement of Children to allow E and F's caregivers to move with them to Idaho. The juvenile court later authorized the move.

## DISCUSSION

### A. *General Legal Principles*

During a section 366.26 hearing, the juvenile court must choose one of three permanent plans: adoption, guardianship, or long-term foster care. (§ 366.26, subd. (b).) Of these options, "[a]doption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) When the court finds by clear and convincing evidence that the child is adoptable, "the court shall terminate parental rights and order the child placed for adoption" unless a statutory exception applies. (§ 366.26, subd. (c)(1).) "Once the court determines by clear and convincing evidence that a child is likely to be adopted, the burden shifts to any party opposing adoption to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section

5

366.26, subdivision (c)(1)." (*In re D.O.* (2016) 247 Cal.App.4th 166, 173 (*D.O.*).) Two exceptions relevant here are the sibling relationship exception (§ 366.26, subd. (c)(1)(B)(v)) and the beneficial parental relationship exception. (*Id.,* subd. (c)(1)(B)(i).)

**B.** ***The juvenile court did not err in finding B, C, and D adoptable.***

"The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time." (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1060.) The clear and convincing standard of proof " 'requires a finding of high probability.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998 (*O.B.*).) "Although a finding of adoptability must be supported by clear and convincing evidence, it is nevertheless a low threshold" as the court need "merely determine that it is 'likely' that the child will be adopted within a reasonable time." (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.)

In an appeal challenging a finding of adoptability, we review the whole record to determine whether it "contains substantial evidence from which a reasonable fact finder could have found it highly probable" that the child was likely to be adopted within a reasonable time. (See *O.B., supra*, 9 Cal.5th at p. 1011.) We "must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at pp. 1011–1012.)

At all permanency planning hearings, the juvenile court shall consider the wishes of the child in determining whether to terminate parental rights. (§ 366.26, subd. (h)(1).) The section does not require the presence of the child in court unless the child, or the child's counsel, so requests and the court

orders. (*Id.*, subd. (h)(2).) Additionally, section 366.26, subdivision (c)(1)(B)(ii) provides an exception to termination of parental rights if a child 12 years or older objects and the juvenile court "finds a compelling reason for determining that termination would be detrimental to the child due" to that circumstance. The court need not "specifically ask how the child feels about ending the parental relationship" and the child need not " 'specifically understand the proceeding is in the nature of a termination of parental rights.' " (*In re Amanda D.* (1997) 55 Cal.App.4th 813, 820.) Rather, the court should explore the child's feelings regarding his or her biological parents, prospective adoptive parents, and current living arrangements. (*Ibid.*)

Here, the court found by clear and convincing evidence B, C, and D were adoptable. Mother does not argue the evidence is insufficient to show that these three children were either generally or specifically adoptable and has forfeited this contention. (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292–1293 (*D.P.*).) Rather, she contends the court erred when it found they were adoptable based on the possibility they will be age 12 by the time of any adoption, will object to adoption, and be rendered legal orphans. As to B, she argues the court failed to consider his age and maturity and that the orders must be reversed as to him because it is possible that, by the time an adoption can be concluded for him, it will be past his twelfth birthday and he will veto any adoption. Mother conceded the case for reversing the orders regarding C, then aged 10 years old, and D, then aged seven years old, is less clear. But she notes they both expressed a wish to continue their relationship with her. We reject Mother's arguments.

At the time of the section 366.26 hearing, B, C, and D were all under the age of 12; therefore, under the plain language of the statute, the

7

"objection exception" of section 366.26, subdivision (c)(1)(B)(ii) was not operative. Although Family Code section 8602 provides "[t]he consent of a child, if over the age of 12 years, is necessary to the child's adoption," dependency proceedings "are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code." (*In re Chantal S.* (1996) 13 Cal.4th 196, 200.) Statutes that apply to civil cases do not apply to dependency actions unless expressly made applicable. (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333, fn. 3.) "[T]here is no provision under section 366.26 adopting Family Code section 8602 for juvenile dependency court proceedings." (*Ibid.*; see § 366.26, subd. (a) [specifying applicable Family Code sections].)

Moreover, Mother's argument is entirely based on speculation that should adoption occur after B, C, and D turn 12 years old, they will *at that time* object to adoption. Yet the children's expressions were far from clear or consistent. And even if each child clearly expressed an intent to object to adoption in the future, section 366.26, subdivision (c)(1)(B)(ii) does not create an automatic "veto." (Seiser and Kumli on California Juvenile Courts Practice and Procedure (2024 ed.) § 2.171[5][c][ii].) Rather, the juvenile court is directed to apply the objection exception if it "finds a compelling reason for determining that termination would be detrimental to the child due" to that circumstance. (§ 366.26, subd. (c)(1)(B)(ii).)

Relatedly, we reject Mother's argument that the court failed to take B's wishes into consideration. Juvenile courts are statutorily required to consider the wishes of the child in determining whether to terminate parental rights. (§ 366.26, subd. (h)(1).) In the absence of evidence to the contrary, we presume the court considered each child's desires. (Evid. Code, § 664.) Specifically here, the record contains understandably ambiguous evidence

regarding the children's wishes. In varying ways each of the three older children expressed positive feelings of attachment to Mother and a desire to continue to see her. At the same time, B and C's caregiver wanted to adopt them and C asked his caregiver to adopt him. The social worker reported that B expressed a desire to stay with his caregiver "long term." D's caregivers wanted to adopt her, with the social worker noting she "appears content in her resource home" and understood the safety concerns in staying with Mother. In sum, substantial evidence supports the adoptability finding as to B, C, and D.

## C. *The juvenile court did not err in finding inapplicable the sibling exception to adoption.*

To establish the sibling exception, a party opposing the termination of parental rights and adoption must demonstrate there would be "substantial interference with a child's sibling relationship." (§ 366.26, subd. (c)(1)(B)(v).) This involves considering the nature and depth of the sibling relationship, such as whether the siblings were raised together, shared meaningful experiences, and have strong bonds. (*Ibid.*; *D.O., supra*, 247 Cal.App.4th at p. 173.) Additionally, it must be shown that maintaining contact is in the child's best interest, particularly regarding their long-term emotional well-being, compared to the benefits of legal permanence through adoption. (*D.O.,* at p. 173.) "The sibling bond exception is evaluated from the perspective of the child who is being considered for adoption, not the perspective of that child's siblings." (*Id.* at p. 174.) We review the juvenile court's underlying factual determinations for substantial evidence and the court's weighing of competing interests for abuse of discretion. (*Ibid.*)

After reviewing the evidence, the juvenile court noted that when the children were "together there's chaos, together there's fighting and shouting, together there's behavioral issues. However, separately, they have stabilized,

9

their behavioral issues have reduced, and they are thriving."  The court concluded the benefits of adoption for E and F outweighed any detriment of severing their sibling relationship with B, C, and D.  Although Mother asserts the sibling exception to adoption applied as to E and F, she failed to provide any analysis showing the juvenile court erred in finding the exception did not apply.  Absent legal analysis with citations to facts in the record supporting her claims of error, Mother cannot prevail on her argument that the court erred in failing to apply the sibling exception to adoption.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).)

Instead, she contends the sibling exception applied as to E and F because, at the time of the section 366.26 hearing, their prospective adoptive parents falsely led the Agency and court to believe there would be continued contact between these children and their older siblings (B, C, and D).  She asserts E and F's move to Idaho means there will be no continuing contact between them and their older siblings.  To make this argument, Mother assumes the court erred in finding the sibling exception did not apply and relies on postjudgment evidence showing E and F's move to Idaho.  Generally, we cannot receive and consider postjudgment evidence that was never before the juvenile court and rely on such evidence on appeal to reverse the judgment.  (*In re Y.M.* (2022) 82 Cal.App.5th 901, 913.)

Even if we considered E and F's move to Idaho, we would reject Mother's argument that the distance between San Diego and Idaho made "any meaningful contact between [E and F] and their older siblings" "all but impossible."  While physical interaction would be limited to trips between the two locations for either sibling set, Mother ignores that the siblings can maintain meaningful contact with video visits and telephone calls.

10

She next argues the juvenile court erred by not considering how the relationship between B, C, and D would be affected by A not being adopted. She also contends that should B veto his adoption, this would substantially interfere with his relationship with C. Mother, however, has not cited anywhere in the record where she raised these arguments to the juvenile court to establish the sibling exception. Nor did she provide any support for her speculative arguments.

Finally, Mother asserts this matter "cried out" for a bonding study addressing the sibling relationship. Recognizing the issue may be forfeited because she never requested a bonding study, she contends the juvenile court should have sua sponte ordered a bonding study under Evidence Code section 730. Mother forfeited this issue by not asking the juvenile court to order a bonding study. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338–1339 (*Lorenzo C.*).) Although Evidence Code section 730 gives a juvenile court authority to commission a bonding study (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084), the juvenile court has no sua sponte duty to order one (*Lorenzo C.*, at pp. 1339–1340). Nor does the Agency have a duty to produce evidence relevant to the sibling exception beyond what the statutes specifically require to be included in its report. (See *id.* at pp. 1343–1344.) The party arguing the sibling exception applies bears the burden of producing evidence establishing the exception. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952.) Accordingly, Mother needed to request a bonding study if she believed that evidence was necessary.

**D.** ***The juvenile court did not err in finding inapplicable the beneficial parental relationship exception to adoption.***

Another statutory exception to the preference for adoption is the parental-benefit exception. (§ 366.26, subd. (c)(1)(B)(i).) This exception applies where "[t]he court finds a compelling reason for determining that

11

termination would be detrimental to the child" (*id.*, subd. (c)(1)(B)), including where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id.*, subd. (c)(1)(B)(i).) As the California Supreme Court has said, this exception "allows a child a legal basis for maintaining a relationship with the child's parent if severing that relationship would, on balance, harm the child," thereby "preserv[ing] [a] child's right to [a] relationship [with his or her parent] even when the child cannot safely live with that parent. What it does not allow is a judgment about the parent's problems to deprive a child of the chance to continue a substantial, positive relationship with the parent." (*In re Caden C.* (2021) 11 Cal.5th 614, 643 (*Caden C.*).)

For the beneficial relationship exception to apply, a parent must show by a preponderance of the evidence (1) "regular visitation and contact with the child, taking into account the extent of visitation permitted"; (2) "that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C., supra*, 11 Cal.5th at p. 636.) A "crucial aspect of the [juvenile] court's responsibility" at the section 366.26 hearing is deciding "whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new

12

adoptive home.  By making this decision, the [juvenile] court determines whether terminating parental rights serves the child's best interest."  (*Id.* at pp. 631–632.)

We review the first two elements of the test for substantial evidence and the third for an abuse of discretion.  (*Caden C., supra*, 11 Cal.5th at pp. 639–640.)  In reviewing for substantial evidence, we do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts' " and will uphold the juvenile court's determinations even where substantial evidence to the contrary also exists.  (*Id.* at p. 640.)  In reviewing for an abuse of discretion, we consider whether the juvenile court made an arbitrary, capricious, or patently absurd determination.  (*Id.* at p. 641.)

Here, the juvenile court found that Mother met the first element set forth in *Caden C., supra*, 11 Cal.5th 614:  consistent visitation with the children.  This finding is unchallenged.  However, Mother challenges the court's findings she did not meet her burden of proving the second and third elements—that a "substantial, positive, emotional attachment to the parent" existed and "terminating that attachment would be detrimental to the children even when balanced against the countervailing benefit of a new, adoptive home."  (*Id.* at p. 636.)

Mother forfeited her challenge to the court's ruling on the beneficial relationship exception by not providing any analysis in her briefing on appeal as to the second and third prongs as to each child.  (*S.C., supra*, 138 Cal.App.4th at p. 408.)  Even assuming Mother did not forfeit this issue, there was no reversible error because she failed to prove a substantial, positive, and emotional attachment between herself and B, C, or D at the section 366.26 hearing.  At the end of supervised visits, the children never demonstrated a desire that a visit continue.  During the visits, Mother

13

sometimes paid attention to A and gave little attention to B, C, or D. A and D had phone calls with Mother three times per week, with D saying "hello" and then leaving while A chatted with Mother.

Moreover, the visitation monitor noted that during one visit, any attention Mother gave to D "appeared to be negative." During another visit, she referred to D as an " 'evil child.' " Once, when D wanted attention, Mother told her to " 'back up' " to give her more space and refused to allow D to sit on her lap. At another visit, D tried to join a conversation between A and Mother, repeating herself three times without acknowledgement.

Nearing the section 366.26 hearing, B declined to attend two visits with Mother and C declined four visits. B and C also had two scheduled phone calls with Mother each week, but she called less than half the time. When Mother did call, C would say "hello" and then leave. B would initially be excited to speak with Mother but often became annoyed or bored after a few minutes. This evidence does not show B, C, or D had a substantial positive emotional attachment to Mother.

Even assuming she had shown a positive emotional attachment to B, C, and D, it was not an abuse of discretion to determine that adoption by committed caregivers outweighed any detriment these three children might experience by losing their relationship with Mother. D expressed a desire to be adopted but she also wanted to live with Mother, who she described as "fun." D stated she would be "sad" if she never saw Mother again and "very sad" if she never spoke to her again. When asked if he liked seeing Mother, his favorite thing about her, and what he did with her when he saw her, C responded "I don't know." He did not miss Mother when he could not see her, but added he would not like it if he never saw or spoke to her again. B wanted to live with his parents and stated he would be sad and cry if he could

never speak to Mother again and "cry instantly" if he could never see her again. Tempering B's statements is the evidence that at the end of visits he never demonstrated a desire to continue the visit, and Mother pointed to no evidence that B looked forward to visits.

On this record, the court reasonably concluded that maintaining B's, C's, and D's relationship with Mother did not outweigh " 'the security and the sense of belonging a new family would confer.' " (*Caden C., supra*, 11 Cal.5th at p. 633.) Thus, the court acted within its discretion in determining the circumstances were not exceptional, such that the termination of Mother's parental rights would be detrimental to these children.

## E. *No reversible attorney conflict existed.*

The California Rules of Court provide "[t]he court may appoint a single attorney to represent a group of siblings involved in the same dependency proceeding." (Cal. Rules of Court, rule 5.660(c)(1)(A).) The attorney has, however, "an ongoing duty to evaluate the interests of each sibling and assess whether there is an actual conflict of interest." (*Id.*, subd. (c)(2)(A).) The fact that siblings have different permanent plans, standing alone, does "not necessarily demonstrate an actual conflict of interest or a reasonable likelihood that an actual conflict of interest will arise." (*Id.*, subd. (c)(1)(C)(v).)

Here, one attorney represented A, B, and C in the juvenile court. Mother claims the juvenile court prejudicially erred by allowing one attorney to represent these three children and that she has standing to raise this issue. She asserts that when A objected to adoption, the possibility of a conflict arose because someone needed to ask B and C what they felt about A's continued contact with her. The Agency does not challenge Mother's standing to raise this argument. Assuming without deciding that Mother has

15

standing, she forfeited this contention by failing to raise it in the juvenile court. (*D.P., supra*, 92 Cal.App.5th at pp. 1292–1293.) In any event, we note that B, C, and D each had their own appellate counsel who filed joinders to the Agency's brief. Thus, B's, C's, and D's respective appellate counsel had notice of this issue but did not join in Mother's argument.

Although D had separate counsel, Mother claims D's counsel was deficient in her representation in that counsel failed to ask her client how A's continued contact with Mother would affect her. She contends the matter should be remanded to explore this issue. Although a parent has standing to raise the issue of a minor's right to counsel in a dependency proceeding (*In re Patricia E.* (1985) 174 Cal.App.3d 1, 6), we located no authority allowing a parent to raise a claim of ineffective assistance of counsel on behalf of a minor. D's appellate counsel had notice of this issue but did not join in Mother's argument.

Assuming without deciding Mother's standing to raise this issue, "[a] court may reject a claim of ineffective counsel if the party fails to show the result would have been more favorable but for the trial counsel's failings." (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.) Here, the record does not establish any reasonable probability that the outcome would have been more favorable to Mother had D's counsel raised this issue in the juvenile court. D's trial counsel appropriately advocated that adoption was in D's best interest, and Mother failed to show the court erred when it declined to apply an exception to adoption as to D. (*Ante*, pts. C & D.) Even if D's trial counsel had raised this issue, speculation that D would be negatively impacted by A's continued contact with Mother is insufficient to show adoption was not in D's best interest.

16

## DISPOSITION

The orders terminating Mother's parental rights are affirmed.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

KELETY, J.